**David JACK and Barbara Jack, Plaintiffs,**

v.

**TRANS WORLD AIRLINES, INC., et al., Defendants.**

**C.L. WYSUPH, Plaintiff,**

v.

**TRANS WORLD AIRLINES, INC., et al., Defendants.**

**Odete MATIAS and Hildebrando Matias, Plaintiffs,**

v.

**TRANS WORLD AIRLINES, INC., et al., Defendants.**

Nos. C 92–3787 BAC, C 92–3972 BAC and C 92–4604 BAC.

United States District Court, N.D. California.

May 17, 1993.

Gerald C. Sterns, Sterns, Walker & Lods, San Francisco, CA, for plaintiffs.

Stephen C. Kenney, Kenney, Burd, Knutson & Markowitz, San Francisco, CA, William C. Brown, III, Bigham, Englar, Jones & Houston, New York City, for defendants.

## ORDER DENYING MOTIONS TO REMAND

CAULFIELD, District Judge.

On July 30, 1992, Trans World Airlines ("TWA") flight 843, departing New York's John F. Kennedy Airport for San Francisco, experienced an interruption of takeoff and crashed, igniting on impact. The plane was completely destroyed by flames but, miraculously, all passengers survived.

Flight 843 passengers filed five lawsuits in San Francisco Superior Court, seeking damages for physical injury and emotional distress. While all five complaints relied exclusively on state law theories of recovery, defendant TWA removed to federal court the three actions in which the plaintiffs held tickets for international flights. According to TWA the cause of action created by the Multilateral Convention for the Unification of Certain Rules Relating to International Transportation by Air, *opened for signature* October 12, 1929, 49 Stat. 3000 (1934), T.S. No. 876, *reprinted at* 49 U.S.C.App. § 1502 note (1988) [hereinafter Warsaw Convention], is the sole basis of recovery available to passengers injured while traveling pursuant to contracts of international carriage. Plaintiffs, however, argue that even if the Warsaw Convention preempts remedies, it does not preempt causes of action, and ask the court to remand their suits to state court.

After careful consideration of the matter, the court concludes that the cause of action under the Warsaw Convention is exclusive. Accordingly, plaintiffs' motions to remand are DENIED.

## DISCUSSION

A. Federal Law on Removal and Preemption

■ Removal of an action from state court is proper only if the action could have been filed initially in federal court—*i.e.,* if there is either diversity jurisdiction or federal question jurisdiction. 28 U.S.C. § 1441(a) (1988); *e.g., Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). The court does not have diversity jurisdiction over these cases. As to federal

**1220**

question jurisdiction, its presence or absence "is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* (citation omitted). "Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987) (citation omitted).

■ "One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* at 63–64, 107 S.Ct. at 1546. The intent of a treaty's contracting parties is the "touchstone" of preemption analysis. *Cf. Cipollone v. Liggett Group, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) (intent of Congress); *Metropolitan Life,* 481 U.S. at 66, 107 S.Ct. at 1547 (same); *Air France v. Saks,* 470 U.S. 392, 399, 105 S.Ct. 1338, 1342, 84 L.Ed.2d 289 (1985) ("it is our responsibility to give the specific words of the treaty a meaning consistent with the shared expectations of the contracting parties"). The Supreme Court has instructed courts to begin "with the text of the treaty and the context in which the written words are used," *Air France,* 470 U.S. at 397, 105 S.Ct. at 1341, and to look to a treaty's drafting history only if the text is ambiguous, *Chan v. Korean Air Lines, Ltd.,* 490 U.S. 122, 134, 109 S.Ct. 1676, 1684, 104 L.Ed.2d 113 (1989).

**B. The Text of The Warsaw Convention**

Article 24 of the Warsaw Convention governs preemption:

*Article 24*

(1) In cases covered by articles 18 [goods and luggage] and 19 [delays] any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention.

(2) In the cases covered by article 17 [personal injury and death] the provisions of the preceding paragraph shall also apply, without prejudice to the questions as to who are the persons who have the right to bring suit and what are their respective rights.

Warsaw Convention, *supra,* art. 24, 49 Stat. at 3020.

Most of the recent decisions interpreting Article 24 infer from its requirement that actions "be brought subject to the conditions and limits of the Convention" that the phrase "however founded" means "whether founded on the Convention or some other law." [1] *See, e.g., Clark v. United Parcel Service, Inc.,* 778 F.Supp. 1209, 1211 (S.D.Fla.1991); *Alvarez v. Aerovias Nacionales de Colombia, S.A.,* 756 F.Supp. 550, 554 (S.D.Fla.1991); *In re Aircrash Disaster at Gander, Newfoundland,* 660 F.Supp. 1202, 1221 & n. 43 (W.D.Ky. 1987); *Rhymes v. Arrow Air, Inc.,* 636 F.Supp. 737, 740 (S.D.Fla.1986); *see also In re Mexico City Aircrash of Oct. 31, 1979,* 708 F.2d 400, 414 n. 25 (9th Cir.1983) (dicta); *In re Aircrash in Bali, Indonesia on Apr. 22, 1974,* 684 F.2d 1301, 1311 & n. 8 (9th Cir. 1982) (dicta), *cert. denied sub nom.,* 493 U.S. 917, 110 S.Ct. 277, 107 L.Ed.2d 258 (1989); *Johnson v. American Airlines, Inc.,* 834 F.2d 721, 723 (9th Cir.1987) (assuming without discussion that state law claims could be maintained); *In re Korean Air Lines Disaster of Sept. 1, 1983,* 932 F.2d 1475, 1491–92 (D.C.Cir.) (Mikva, J., dissenting), *cert. denied*

---

1. Before the Second Circuit's 1978 decision in *Benjamins v. British European Airways,* 572 F.2d 913 (2d Cir.1978), *cert. denied,* 439 U.S. 1114, 99 S.Ct. 1016, 59 L.Ed.2d 72 (1979), most courts held that the Warsaw Convention governed remedies only, and that a plaintiff's cause of action had to spring from some independent source. *See, e.g., Maugnie v. Compagnie Nationale Air France,* 549 F.2d 1256, 1258 (9th Cir.), *cert. denied,* 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1072 (1977); *Noel v. Linea Aeropostal Venezolana,* 247 F.2d 677 (2d Cir.), *cert. denied,* 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 262 (1957); *Komlos v. Compagnie Nationale Air France,* 111 F.Supp. 393, 401 (S.D.N.Y.1952), *rev'd on other grounds,* 209 F.2d 436 (2d Cir.1953).

*sub nom.,* —— U.S. ——, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991). *Contra In re Air Disaster at Lockerbie, Scotland,* 928 F.2d 1267, 1275 (2d Cir.) (nonexclusivity would frustrate goals of uniformity and certainty), *cert. denied sub nom.,* —— U.S. ——, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991); *Boehringer–Mannheim Diagnostics, Inc. v. Pan Amer. World Airways, Inc.,* 737 F.2d 456 (5th Cir.1984), *cert. denied and appeal dismissed,* 469 U.S. 1186, 105 S.Ct. 951, 83 L.Ed.2d 959 (1985) (same); *Velasquez v. Aerovias Nacionales de Colombia, S.A.,* 747 F.Supp. 670, 675–77 (S.D.Fla.1990) (same).

The official and governing text of the treaty, however, is in French, and it is that text which "must guide our analysis." *Eastern Airlines, Inc. v. Floyd,* —— U.S. ——, ——, 111 S.Ct. 1489, 1493, 113 L.Ed.2d 569 (1991). In French, Article 24 states that actions "ne peut être exercée que dans les conditions et limites prévues par la présente Convention." Warsaw Convention, *supra,* art. 24, 49 Stat. at 3006. "Conditions" has a number of meanings in French, including "the fundamental basis," *e.g., Larousse de Pouche* 117 (1990), and if "basis" or "terms" are more accurate translations, then Article 24 means that actions "however pleaded" will be considered to have been brought on the basis of the Convention—*i.e.,* that the Warsaw Convention's cause of action is exclusive. *See In re Air Disaster at Lockerbie, Scotland,* 928 F.2d at 1282; *Benjamins v. British European Airways,* 572 F.2d 913, 918 (2d Cir.1978), *cert. denied,* 439 U.S. 1114, 99 S.Ct. 1016, 59 L.Ed.2d 72 (1979).

■■■ Because Article 24's authentic text is ambiguous, the court may properly turn to its drafting history for clarification. As will be seen, the Convention's legislative history makes it clear that the drafters expected the Convention's cause of action to preempt all other bases for damages arising from delay, lost or damaged goods, personal injury, and death.

**2.** For a more detailed outline of the Convention's history, see John Jay Ide, *The History and Accomplishments of the International Technical Committee of Aerial Legal Experts,* 3 J.Air L. 27, 27–37 (1932), and Henry De Vos, *Report of Citeja on the Preliminary Draft, reprinted and translated in* 2

C. The Drafting History of the Warsaw Convention

### 1. The International Technical Committee of Aerial Legal Experts

The Warsaw Convention had its genesis in a proposed convention on the liability of air carriers, which was circulated by the French government in anticipation of the 1925 International Conference on Private Air Law. It was hoped that an international convention limiting carriers' exposure to damages awards "would enable airlines to attract capital that might otherwise be scared away by the fear of a single catastrophic accident." Andreas F. Lowenfeld & Allan I. Mendelsohn, *The United States and the Warsaw Convention,* 80 Harv.L.Rev. 497, 499 (1967); *accord. Eastern Airlines, Inc. v. Floyd,* —— U.S. ——, ——, 111 S.Ct. 1489, 1499, 113 L.Ed.2d 569 (1991).[2]

Participants at the 1925 Conference modified the proposed convention and authorized the creation of the International Technical Committee of Aerial Legal Experts ("Citeja"). At its first official session, Citeja focused primarily on ministerial matters, although members also began work on a draft convention governing aerial bills of lading. At the Second Session, Citeja voted to combine the proposed convention on carrier liability with the one on aerial bills of lading, and the combined draft was submitted to the Third Session, held in Madrid from May 24–29, 1928. That draft provided, in relevant part:

*Article 22*

The carrier shall be liable for damage during the carriage:

(a) In case of death, wounding or other physical bodily injury of every description suffered by a traveler;

(b) In case of destruction, loss or damage to goods or baggage;

*Second International Conference on Private Air Law Minutes* 407, 407–09 (1930), *and quoted in* G. Nathan Calkins, Jr., *The Cause of Action Under the Warsaw Convention: Part I,* 26 J.Air L. & Commerce 217, 218–29 (1959).

(c) In case of delay suffered by a traveler, by goods, or by baggage.

### Article 26

In case of accident, loss, damage or delay, *the liability action may not be brought against the carrier except on the basis of this convention,* unless the damage arises through an intentional unlawful act as to which he bears the liability; in such case, he shall not have the right to avail himself of the provisions of this convention which exclude in whole or in part his direct liability or that derived from the errors or omissions of his servants or agents.

### Article 27

In case of death of the person holding the cause of action, *every liability action, however founded[,] may be exercised[ ] within the terms and limits provided by this convention,* by those persons to whom such action belongs in accordance with the national law of the deceased or, in default of such law, in accordance with the law of the place of his last permanent residence.

*Reprinted and translated in* G. Nathan Calkins, Jr., *The Cause of Action Under the Warsaw Convention: Part I,* 26 J. Air L. & Commerce 217, 221–23 (1959) (emphasis added).

While it is evident from this version of Article 26, that Citeja expected the Convention to provide the exclusive basis of recovery for claims arising out of "accident, loss, damage or delay," what of claims governed by Article 27? Actually, the drafters' decision to separate wrongful death actions from other kinds of injury makes perfect sense so long as one bears in mind that the drafters were focussing on contracts of carriage. In many civil law countries, a public carrier's negligence constitutes both a tort and a contractual breach of his covenant of safe carriage, and it is the later type of lawsuit on which the Convention's cause of action was modeled. *E.g., In re Air Disaster at Lockerbie, Scotland,* 928 F.2d 1267, 1279 (2d Cir.), *cert. denied sub nom.,* —— U.S. ——, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991); H. Drion, *Limitations of Liability in International Air Law* 51–87 (1954); G.N. Calkins, Jr., *Part I, supra,* at 223–24. Before the Convention, passengers who were injured but survived accidents and merchants whose goods were lost during shipping could sue either in tort or in contract. Article 26 eliminated that choice by requiring them to proceed under the contract-law-based Convention. A deceased passenger's heirs, on the other hand, have no contract with a carrier; their standing issues from other sources of law. Article 27 accordingly gave them a right to sue—whatever the theoretical basis for their standing—so long as their suit was exercised within the provisions of the Convention.[3]

At some point in the debates, the experts abandoned their attempt to include a choice of law provision in Article 27,[4] and instead

---

3. As Mr. Ripert, France's representative to Citeja, explained:

> In accordance with the law of certain countries in case of death, the relatives [of the deceased] act by virtue of a right of reparation of the damage caused them, and the rules of contractual law no longer apply. Specifically this is the case with French law of maritime transport. Thus if we do not put something in, it will permit all the relatives to act on the theory that the contract is no defense against them.

*Proceedings of the Third Session of Citeja* 55, *translated and quoted in* G. Nathan Calkins, Jr. *The Cause of Action Under the Warsaw Convention: Part II,* 26 J.Air L. & Commerce 323, 327 (1959) (alteration in original).

4. *See Proceedings of the Third Session of Citeja* 55, *translated and quoted in* G.N. Calkins, Jr., *Part I, supra,* at 224:

> The reporter drew attention to the fact that in Article 27 there are two provisions. The first, in case of the death of the holder of the right [of action] every liability action shall be exercised within the terms and limitations provided by the convention—that is to say that the system of limitation of liability shall always apply whenever there is the death of the holder of the right.
>
> The second idea is that of knowing by whom the action shall be brought.
>
> The proper means of expressing these thoughts has been sought in vain. One or two of the elements were given, but it is not possible at the present time to come to a definitive formula which is capable of dealing with the question in its entirety.

(alteration in original); *see also* Henry De Vos, *Report of Citeja on the Preliminary Draft, reprinted and translated in* 2 Second International Con-

deleted Article 27's second half, leaving each member nation free to determine for itself the persons entitled to assert a claim for wrongful death.[5] The precise wording of Article 27 was left, along with proposed modifications to other articles, to the editing committee.

The revisions to Articles 26 and 27 made by the editing committee strongly suggest that Citeja expected the Convention to be the exclusive basis for recovery. After incorporating all of the proposed changes, the editing committee returned a draft to the full membership, and the Reporter, going over the new draft with Citeja's full body, explained their revisions as follows:

> [s]ince there had been eliminated from Article 27 the part relating to the person who would be entitled to bring suit on the death of the holder of the right, *the article no longer contained more than a declaration that all action must be brought on the basis of the convention. This was a repetition of the same idea contained in Article 26.* The drafting subcommittee had therefore combined the two articles in a new Article 24. . . .

*Proceedings of the Third Session of Citeja* 66–67, *translated and quoted in* G.N. Calkins, Jr., *Part I, supra,* at 226 (emphasis added). The draft now provided, in relevant part:

### Article 21

The carrier is liable for damage sustained during transportation:

(a) in case of death, injury or any other bodily injury sustained by a passenger;

(b) in case of destruction[,] loss or deterioration of goods or baggage;

(c) in case of delay sustained by a passenger, goods, or baggage.

### Article 24

In the cases provided in article 21, even in the case of death of the interested party, *any action in liability on any ground cannot be brought except within the conditions and limits provided by this Convention.*

If the damage is caused by an [intentional] illicit act for which the carrier is liable, he shall not be entitled to avail himself of the provisions of this Convention which exclude all or part of the liability, direct or derived from the faults of his agents.

*Preliminary Draft of Convention, reprinted and translated in* 2 *Second International Conference on Private Air Law Minutes* 424, 438–40 (1930) (emphasis added).

The only way the Report's comments make sense, given the editing committee's decision to use Article 27's "conditions and limits of the convention" rather than Article 26's "on the basis of the convention," is if the drafters were using "conditions" in its "fundamental basis" sense. In other words, the members of Citeja saw no substantive difference between the two phrases; by requiring that actions "ne peut être exercée que dans les conditions et limits prévues par la présente Convention," Citeja thought they were requiring suits to be brought on the basis of the Convention.[6]

---

5. *See Proceedings of the Third Session of Citeja* 55–56, *translated and quoted in* G.N. Calkins, Jr., *Part II, supra,* at 336:

   The reporter was of the opinion that since there was nothing in the text, national legislation would remain free to determine the cate-

   ference on Private Air Law Minutes 407, 426 (1930):

   The question was posed of knowing if one could not determine who are the persons who have the right to act in case of death and which are the damages subject to reparation.

   It was impossible to find a satisfactory solution to this double problem and [Citeja] felt that this question of private international law should be settled independently of the present Convention.

gories of persons entitled to sue and that it would be better to say nothing.

6. G. Nathan Calkins, Jr., Chairman of the U.S. Delegation to the Hague Conference to Amend the Warsaw Convention, was the first to argue that "terms" was a better translation than "conditions." G.N. Calkins, Jr., *Part I, supra,* at 226 n. 21. According to Calkins, it was "apparent" that the delegates had been using "conditions" in the sense of "the fundamental basis," and "terms" would therefore be a superior translation.

Calkins made the argument in support of his broader thesis that the Warsaw Convention embodied a private cause of action, but he failed to persuade many readers because he did not ex-

### 2. The Warsaw Conference

At the close of the Third Session, Citeja submitted the Convention draft to the French Government for distribution in anticipation of the Second International Conference on Private Air Law, held in Warsaw, Poland from October 4–8, 1929. Thirty-three nations were represented at the Warsaw Conference, thirty-two by delegate and the United States by observer. John Jay Ide, *The History and Accomplishments of the International Technical Committee of Aerial Legal Experts*, 3 J. Air L. 27, 36 (1932). Because most of the Conference participants were members of Citeja and had participated in the Convention's drafting, the debates tended to focus on specific amendments to the Convention, rather than on its general purpose or philosophy. G.N. Calkins, Jr., *Part I, supra*, at 227.

The modifications proposed for Articles 20, 21, and 24 were characteristically minor. After some debate, the delegates instructed the Conference editing committee (1) to modify Article 20 so that a carrier's duty of care would commence for passengers when they embarked, and for goods when they entered the airport, 1 *Second International Conference on Private Air Law Minutes* 113–33 (1930), (2) to find a way of saying "intentional illicit acts" that would be understood by all the member nations, *id.* at 88–104, and (3) to rewrite Article 21 so that it covered deaths resulting from injuries sustained during transportation, even if the victim died after disembarking, *id.* at 287–88. In addition, the German delegation wanted the Convention expressly to leave the issue of standing in wrongful death cases to the local law of each Contracting State.[7]

plain why it was "apparent." For example, in ruling that plaintiffs could sue on the basis of the Convention, the Second Circuit was influenced by Calkins's argument, but did not consider it conclusive:

> As to "conditions," that term in English does imply that the source of the action must be sought elsewhere than the Convention, which supplies only conditions and limits. Nonetheless, there is some evidence for the view that the French has not been so translated here as to provide the best interpretation of the delegates' meaning, and that "basis" or "terms" would be a closer translation in this context of "conditions." The arguments as to Article 24 are not conclusive either way.

*Benjamins v. British European Airways*, 572 F.2d 913, 918 (2d Cir.1978), *cert. denied*, 439 U.S. 1114, 99 S.Ct. 1016, 59 L.Ed.2d 72 (1979) (citing Calkins, *Part I, supra*, at 225–26); *accord. In re Mexico City Aircrash of Oct. 31, 1979*, 708 F.2d 400, 414 n. 25 (9th Cir.1983) (Finding Calkins's argument that "terms" supports the existence of a cause of action under the Convention inconclusive).

While this court agrees with Mr. Calkins that "terms" is the better translation (and, hopefully, has provided in the body of this order a more thorough explanation as to why), the court notes that even Mr. Calkins failed to recognize the argument's implications for the exclusivity issue: Calkins dismissed the editing committee's decision to drop Article 26's language in favor of Article 27's as an editing error, G.N. Calkins, Jr., *Part I, supra*, at 225–26, focussing instead on Mr. Ripert's statement that Article 27 would prevent a decedent's heirs from circumventing the Convention to conclude that the Convention did not create an exclusive cause of action. G.N. Calkins, Jr., *Part II, supra*, at 327–28.

7. Germany's proposal, which was submitted in writing before the Conference began, *Proposals of German Delegation, reprinted and translated in* 2 *Second International Conference on Private Air Law Minutes* 465, 468 (1930), renewed an objection expressed at Citeja's Third Session:

> Mr. Richter [Germany] wondered in case of the deletion of the last words [by the persons to whom action belongs in accordance with the national law of the deceased or, in the absence thereof, in accordance with that of his last permanent residence] if the draft would not be subject to this interpretation: Article 22 [now 17] says that the carrier shall be liable for the damages sustained, in case of death, wounding, etc.... That is, he must bear all damages including those caused by death; for example, taking the case of a person having a regular monthly allotment paid by the deceased, if we strike the last words, will the Contracting States be in a position to specify the persons to whom the deceased owed support? If states are to be so authorized to modify the Convention in this way, we ought to say so.
> The Chairman. Classification of persons entitled to sue [ayants droit] is outside the Convention; it results from national law.
> Mr. Richter. That is certainly the intent of the Commission, but he did not know if that would follow from the text, if nothing were said, and if Article 22 [present 17] declared that the carrier shall be liable for any damage caused by death.
> Mr. Ripert and the Chairman made the observation that we had reached the limit of conventional right.
> Mr. Richter proposed putting an indication in the minutes which might appear in the protocol [of signature] reading, "The Contracting States are free in applying the Convention to

The editing committee returned with the following draft:

### Article 17

The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger, or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

### Article 18

(1) The carrier shall be liable for damage sustained in the event of the destruction or loss of, or of damage to, any checked baggage or any goods, if the occurrence which caused the damage so sustained took place during the transportation by air.

(2) The transportation by air within the meaning of the preceding paragraph shall comprise the period during which the baggage or goods are in charge of the carrier, whether in an airport or on board an aircraft, or, in the case of a landing outside an airport, in any place whatsoever.

(3) The period of the transportation by air shall not extend to any transportation by land, by sea, or by river, performed outside an aerodrome. If however, such transportation takes place in the performance of a contract for transportation by air, for the purpose of loading, delivery or transshipment, any damage is presumed, subject to proof to the contrary, to have been the result of an event which took place during the transportation by air.

### Article 19

The carrier shall be liable for damage caused by delay in the transportation by air of passengers, baggage, or goods.

determine the categories of persons entitled to sue and share in the proceeds [ayants droit]." The reporter was of the opinion that since there was nothing in the text, national legislation would remain free to determine the categories of persons entitled to sue and that it would be better to say nothing.

### Article 24

[ (1) ] In the cases covered by article 17, even in case of death, any action in liability, however founded, can only be brought subject to the conditions and limits set out in this Convention, without prejudice to the questions as to who are the persons who have the right to bring suit and what are their respective rights.

(2) The carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability, if the damage is caused by his wilful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be the equivalent to wilful misconduct.

(3) He will be unable to do so, under the same conditions if the act has been caused by his agents, acting within the scope of his employment.

2 *Second International Conference on Private Air Law Minutes, supra,* at 356, 357–58, 365–66.

Reviewing the draft, the delegates adopted Articles 17, 18, and 19 in their entirety, and noted that Article 24 needed to cross-reference all of them (it inadvertently referenced only Article 17). The delegates also decided that the paragraphs on intentional misconduct merited their own article. *Id.* at 356–70. With those instructions in hand, the editing committee resumed its work, and the next draft was adopted by the Conference as the official Multilateral Convention for Unification of Certain Rules Relating to International Transportation by Air.

As the preceding review illustrates, the Warsaw Conference debates are notable more for their *lack* of discussion regarding preemption than they are for any comments made on the subject. Presumably, the delegates thought the issue had been adequately resolved at Citeja's Third Session. In fact, only Sir Alfred Dennis of the United King-

*Proceedings of the Third Session of Citeja* 55–56, *translated and quoted in* G.N. Calkins, Jr., *Part II, supra,* at 335–36 (alterations in original).

Nothing more was said at the Third Session, but the Warsaw Conference's editing committee accepted Mr. Richter's proposal without debate. G.N. Calkins, *supra,* at 336.

dom said anything directly on point, and his comments support a finding of exclusivity:

> We have at the beginning of the article: "any action in liability, however founded, can only be brought subject to the conditions and limits set out in this Convention."
>
> This is a very important stipulation which touches upon the very substance of the Convention, because it excludes recourse to common law; originally it was a separate article.

2 *Second International Conference on Private Air Law Minutes, supra,* at 368.

### D. The Structure of the Warsaw Convention

The court notes, lastly, that Article 24(1) would have little purpose if it meant merely that the Convention's conditions and limits preempt inconsistent provisions of local law: Article 1(1) already says that the Convention "shall apply to all international transportation of persons, baggage or goods," Warsaw Convention, *supra,* art. 1(1), 49 Stat. at 3014, including, one assumes, Article 22's monetary limits. If the Convention is read in accordance with the rule that "[a] statute is to be construed so as to avoid making any word superfluous," *United States v. Handy,* 761 F.2d 1279, 1280 (9th Cir.1985), *quoted in Estate of Reynolds v. Martin,* 985 F.2d 470 (9th Cir.1993), then Articles 17, 18, and 19 must create rights of action for injury caused by delay, lost or damaged goods, personal injury, and death, Article 22 must limit recovery, and Article 24 must make them exclusive. One need only look at Article 22(3) to see that this is the most coherent reading of the Convention. Article 22(3) caps at 5,000 francs the amount a plaintiff can recover for lost or damaged carry-on baggage, Warsaw Convention, *supra,* art. 22(3), 49 Stat. at 3019, and obviously preempts local law to the extent that local law allows awards above 5,000 francs—even though a plaintiff who has lost his carry-on luggage cannot sue on the basis of the Convention and even though Article 24 does not mention carry-on luggage.

### CONCLUSION

Supreme Court precedent instructs courts to look to the intent of a treaty's contracting parties to determine whether the treaty provides an exclusive cause of action. After carefully reviewing the text, drafting history, and structure of the Warsaw Convention, the court believes that the Convention's authors expected it to be the exclusive basis of recovery for damages arising from delay, lost or damaged goods, personal injury, and death during international flights. In short, the Warsaw Convention preempts state law causes of action, not just remedies, and TWA's removal of these actions was proper. Plaintiffs' motions to remand are, accordingly, DENIED.

The court recognizes that this order involves a controlling question of law as to which there is substantial ground for difference of opinion. Indeed, the Supreme Court, the D.C. Circuit, and the Eleventh Circuit have all declined to decide the issue, *see Eastern Airlines, Inc. v. Floyd,* —— U.S. ——, ——, 111 S.Ct. 1489, 1502, 113 L.Ed.2d 569 (1991); *In re Korean Air Lines Disaster of Sept. 1, 1983,* 932 F.2d 1475, 1486 (D.C.Cir.), *cert. denied sub nom.,* —— U.S. ——, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991); *Floyd v. Eastern Airlines, Inc.,* 872 F.2d 1462 (11th Cir.1989), *rev'd on other grounds,* —— U.S. ——, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991), and the Ninth Circuit has twice stated that it would likely find the Convention to be nonexclusive were the issue directly before it, *In re Mexico City Aircrash of Oct. 31, 1979,* 708 F.2d 400, 414 n. 25 (9th Cir.1983); *In re Aircrash in Bali, Indonesia on Apr. 22, 1974,* 684 F.2d 1301, 1311 & n. 8 (9th Cir.1982), *cert. denied sub nom.,* 493 U.S. 917, 110 S.Ct. 277, 107 L.Ed.2d 258 (1989). Because an immediate appeal of this order may materially advance the ultimate termination of the litigation, the court hereby certifies the order for interlocutory appeal. 28 U.S.C. § 1292(b).

IT IS SO ORDERED.