Nancy LAVADENZ DE ESTENSSORO, individually, and as Successor in Interest of the Estate of Jose Estenssoro, deceased; Jose A. Estenssoro; Jorge A. Estenssoro; Ana Estenssoro; Eugenia Estenssoro Lavadenz, Nancy Cecilia Estenssoro, Plaintiffs,

v.

AMERICAN JET, S.A.; Thomason Aircraft Corporation; Pacific Coast Lease Corporation; West Air, Inc.; Jeppesen Sanderson Inc.; Donald Grimes; and Does 1–100, Inclusive, Defendants.

No. CV 96–4250 ABC (SHX).

United States District Court,
C.D. California.

Oct. 10, 1996.

Robert E. Guilford, Paul J. Hedlund, Baum, Hedlund, Aristei, Guilford & Downey, Los Angeles, CA, for Plaintiffs, Nancy Lavadenz De Estenssoro, Martha I.A. de Zinn, individually, and as Successor in Interest of the Estate of M. Ricardo Zinn, deceased; Gustavo F. Zinn; Ricardo C. Zinn, Silvia Marcela Zinn.

Patrick E. Bailey, Forrest Walworth Brown, Maureen A. Grisanti, Bailey & Marzano, Santa Monica, CA, for Defendants American Jet, S.A., Pacific Coast Lease Corporation, West Air, Inc., Estate of Arturo Pagniez, deceased and Estate of Abelardo Pallich, deceased.

John Shaw, Kern & Wooley, Los Angeles, CA, for Defendant Thomason Aircraft Corporation.

Roger Clark, Bienstock & Clark, Santa Monica, CA, for Defendant Donald Grimes.

## ORDER RE: REMAND TO STATE COURT

COLLINS, District Judge.

### I. Factual and Procedural Background

On May 1, 1996, Plaintiffs in this action filed a State Court complaint for damages for wrongful death and survival action arising from an airplane crash near Quito, Ecuador. Defendants American Jet, S.A. and Pacific Coast Lease Corporation (collectively, "Removing Defendants") filed a notice of removal to this Court on June 17, 1996.[1] Removing Defendants assert that, although pled to allege state law causes of action, this case is governed by the Convention for Unification of Certain Rules Relating to International Transportation by Air, 49 U.S.C. § 40105 (the "Warsaw Convention").

On July 11, 1996, the Court issued an Order to Show Cause Re: Why Action Should Not Be Remanded for Failure to Adequately Allege Jurisdiction ("OSC"). Plaintiffs filed a Brief in Support of the Court's July 11, 1996 OSC on July 19, 1996. On July 22, 1996, Removing Defendants filed a Response to the Court's OSC. Removing Defendants filed a Supplemental Memorandum of Points and Authorities in Opposition to Plaintiffs' Brief in Support of Order to Show Cause on August 1, 1996.

### II. Discussion

#### A. Standard

Courts in the Ninth Circuit apply a " 'strong presumption' against removal jurisdiction," with the result that "the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992) (citing *Nishimoto v. Federman–Bachrach & Assocs.,* 903 F.2d 709, 712 n. 3 (9th Cir.1990); *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1195 (9th Cir.1988)). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* (citing *Libhart v. Santa Monica Dairy Co.,* 592 F.2d 1062, 1064 (9th Cir.1979)).

As a general rule, the presence or absence of federal question jurisdiction "is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.*

Ordinarily, "[f]ederal pre-emption is ... a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). However, "[o]ne corollary of the well-pleaded complaint rule ... is that Congress may so completely pre-empt a particu-

---

1. Defendant Thomason Aircraft Corporation filed a Joinder in Notice of Removal on August 5, 1996.

lar area that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* at 63–64, 107 S.Ct. at 1546. In such a case of "complete pre-emption," removal will be proper.

## B. Analysis

Defendants contend that "the issue presented to the Court is not a factual determination but strictly a legal determination of whether the Warsaw Convention completely preempts Plaintiff's state law claim." Defs.' Response at 5. "That the issue of exclusivity is unresolved in the Ninth Circuit does not create doubt as to Defendants' right to remove, because it is up to this Court to make the legal determination...." *Id.* at 5–6. Plaintiffs, on the other hand, maintain that "the accident flight is not covered by the Warsaw Convention." Pls.' Brief at 2:15. Because the Court concludes that the Warsaw Convention does not completely preempt Plaintiffs' state law causes of action, the Court assumes for the purposes of the instant analysis, without deciding, that the airplane crash at issue is covered by the Warsaw Convention.

■ The Warsaw Convention was created when international air travel was still in its infancy. *See* Lowenfeld & Mendelsohn, "The United States and the Warsaw Convention," 80 *Harv.L.Rev.* 497, 498–99 (1967). "The [Warsaw] Convention was the result of two international conferences held in Paris in 1925 and Warsaw in 1929, and of the work done by the interim Commite International Technique d'Experts Juridique Aeriens (CI-TEJA) created by the Paris Conference." *Id.* "The [Warsaw] Convention had two primary goals: first, to establish uniformity in the aviation industry with regard to 'the procedure for dealing with claims arising out of international transportation and the substantive law applicable to such claims,' as well as with regard to documentation such as tickets and waybills; second—recognized as the more important purpose—to limit air carriers' potential liability in the event of accidents." *Boehringer–Mannheim Diagnostics, Inc. v. Pan Am. World Airways, Inc.,* 737 F.2d 456, 459 (5th Cir.1984) (paraphrasing Lowenfeld & Mendelsohn at 498–99), *cert.*

*denied,* 469 U.S. 1186, 105 S.Ct. 951, 83 L.Ed.2d 959 (1985). The Convention limited an air carrier's liability to a specific amount of damages. *See* Lowenfeld & Mendelsohn at 499. "It was hoped that such a limit, applied uniformly on international flights—and, internally as well through corresponding legislation in the member countries—would enable airlines to attract capital that might otherwise be scared away by the fear of a single catastrophic accident." *Id.*

Neither the United States Supreme Court nor the Ninth Circuit has resolved the issue of whether the Warsaw Convention completely preempts state causes of action. The circuits which have rendered an opinion on the matter are divided. For instance, the Second Circuit has held that "the existence of separate state causes of action conflicts so strongly with the uniform enforcement of the [Warsaw Convention] that in our view that presumption [against preemption] is overcome." *In re Air Disaster at Lockerbie, Scotland on December 21, 1988,* 928 F.2d 1267, 1278 (2nd Cir.), *cert. denied sub nom. Rein v. Pan American World Airways, Inc.,* 502 U.S. 920, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991). Similarly, the Fifth Circuit has also held that the Warsaw Convention "creates an exclusive cause of action against air carriers ... and is the exclusive remedy." *Boehringer–Mannheim,* 737 F.2d at 459; *see also Luna v. Compania Panamena De Aviacion,* 851 F.Supp. 826, 829 (S.D.Tex.1994). In addition, after a thoughtful analysis of the drafting history of the Convention, former Judge Caulfield of the United States District Court for the Northern District of California concluded that "the cause of action under the Warsaw Convention is exclusive." *Jack v. Trans World Airlines, Inc.,* 820 F.Supp. 1218, 1219 (N.D.Cal.1993).

Despite these courts' determinations that the Warsaw Convention provides the exclusive recourse for damages arising from an activity which the Warsaw Convention covers, several other courts have reached the opposite conclusion. For example, the *Lockerbie* decision has been criticized by district courts unwilling to follow its authority. *See Campos v. Sociedad Aeronautica de Medellin Consolidada, S.A.,* 882 F.Supp. 1056

(S.D.Fla.1994) (in light of the silence of both the Supreme Court and the Eleventh Circuit, the court was reluctant to follow the *Lockerbie* court's lead and do an 'about-face' on the exclusivity issue). Indeed, Second Circuit decisions prior to *Lockerbie* found that, if "the Convention draftsmen intended to create a contract cause of action, ... they did not intend that cause of action to be exclusive." *Tokio Marine and Fire Insurance Co. v. McDonnell Douglas Corp.*, 617 F.2d 936, 942 (2nd Cir.1980); *see also Benjamins v. British European Airways*, 572 F.2d 913, 921 (2nd Cir.1978), *cert. denied*, 439 U.S. 1114, 99 S.Ct. 1016, 59 L.Ed.2d 72 (1979). The *Benjamins* court reasoned that

> [t]he purpose of Warsaw was "to effect a uniformity of procedure and remedies." To accomplish this goal, the drafters could have created a single cause of action to be asserted wherever suit was brought for wrongful death in international air travel. Alternatively, the drafters could have created a set of conditions and limitations uniformly applicable to all the various causes of action created by local law of the countries around the world. The drafters' choice of the latter alternative is evidenced by Article 24, which provides that any action "however founded" may only be brought "subject to" the "conditions and limits set out in [the] convention."

*Benjamins*, 572 F.2d at 921.

Moreover, although the Ninth Circuit has not squarely addressed the issue, at least three Ninth Circuit cases have opined, in dicta, that the causes of action available under the Warsaw Convention are not exclusive. *See Johnson v. American Airlines, Inc.*, 834 F.2d 721, 723 (9th Cir.1987) (asserting without discussion that "[s]tate-law claims allowing damages for injuries to goods in international air transportation can only be maintained subject to the conditions and limits outlined in the Warsaw Convention."); *In re Mexico City Aircrash of Oct. 31, 1979*, 708 F.2d 400, 414 n. 25 (9th Cir.1983) (stating in dicta that "[t]he delegates [to the Warsaw Convention] did not intend that the cause of action created by the Convention to [sic] be exclusive. For example, in the United States, state law causes of action may be invoked by plaintiffs injured during international air transportation."); *In re Aircrash in Bali, Indonesia on Apr. 22, 1974*, 684 F.2d 1301, 1311 & n. 8 (9th Cir.1982) (noting in dicta that "the Convention has never been read to limit plaintiffs to a cause of action arising thereunder, but rather to limit the recovery in suits for injury."), *cert. denied sub nom. Pan Am. World Airways, Inc. v. Causey*, 493 U.S. 917, 110 S.Ct. 277, 107 L.Ed.2d 258 (1989). For the reasons enumerated below, the Court is not persuaded by the cases which have held that the Warsaw Convention completely preempts state law. Rather, the Court is inclined to follow the Ninth Circuit dicta asserting that the causes of action created by the Warsaw Convention are not exclusive. According to this Court's reading, the Warsaw Convention simply limits the recovery available under state law.

For the Warsaw Convention to completely preempt state law, Congress must have either expressed its intent to supplant state law (express preemption), or regulated the subject so pervasively that it completely occupies the field (non-express preemption). *See Boehringer–Mannheim*, 737 F.2d at 459. "The [Warsaw] Convention has not expressly preempted state law." *Id.* Thus, the Court must determine whether Warsaw Convention regulation is so pervasive that it completely occupies the field. "The test for non-express preemption is whether: (1) the area requires national uniformity, (2) there is evidence of congressional design to preempt the field, or (3) the state statute actually and directly conflicts with the federal provision." *Id.* (citations omitted).

With regard to the first element, both the Second and Fifth Circuits have found that the Warsaw Convention is exclusive because the area requires national uniformity. *See Boehringer–Mannheim*, 737 F.2d at 459 ("An obvious major purpose of the Warsaw Convention was to secure uniformity of liability for air carriers.... The law of Texas, as relates to the cause of action, is preempted.") (citation omitted).; *Lockerbie*, 928 F.2d at 1274–1278 ("allowing each of the individual states to prescribe the elements of damage

claims governed by the [Warsaw] Convention would ... 'create potential frustration of national purposes.' ") (quoting *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959)). The Court does not agree that the Warsaw Convention's objective of uniformity of *liability* dictates a finding of complete preemption. Rather, the plain language of the Warsaw Convention itself suggests that the opposite is true.

Article 24 of the Warsaw Convention provides as follows:

(1) In the cases covered by articles 18 [damages to checked baggage or any goods] and 19 [damages occasioned by delay] any action for damages, *however founded*, can only be brought subject to the conditions and limits set out in this convention.

(2) In the cases covered by article 17 [damages for passenger death or wounding] the provisions of the preceding paragraph shall also apply, without prejudice to the questions as to who are the persons who have the right to bring suit and what are their respective rights.

49 U.S.C. § 40105 (emphasis added).

■ This Court agrees with the *Benjamins* court that Article 24—and particularly the inclusion of the words "any action for damages, however founded"—provides evidence that the drafters of the Warsaw Convention intended to create "a set of conditions and limitations uniformly applicable to all the various causes of action created by local law of all the countries around the world." *Benjamins*, 572 F.2d at 921. *See also Mexico City*, 708 F.2d at 414 n. 25 ("The language of article 24(1) that any action, 'however founded,' must be brought subject to the conditions and limits of the Convention, might be taken to mean that an action must be 'founded' on some law other than the Convention.... The best explanation for the wording of article 24(1) appears to be that the delegates did not intend that the cause of action created by the Convention to [sic] be exclusive."); *Aircrash in Bali*, 684 F.2d at 1311 n. 8 ("the Convention has never been read to limit plaintiffs to a cause of acting arising thereunder"). Indeed, consistent with the rules of statutory construction, the Court is bound to interpret each word of the Warsaw Convention to be necessary to the whole. The Court therefore finds that the drafters' inclusion of the words "however founded" in Article 24 of the Convention indicates their intent that the Warsaw Convention *not* preempt causes of action based on state law.[2] Indeed, the Court concludes that the drafters intended that state law causes of action would survive the Warsaw Convention, but that such claims would be subject to the limitations of liability imposed by the Convention. Because this interpretation does not frustrate the goal of national

---

**2.** The Court is cognizant of Judge Caulfield's reliance on the statement of delegate Sir Alfred Dennis that

> We have at the beginning of the article [24]: "any action in liability, however founded, can only be brought subject to the conditions and limits set out in this Convention."

This is a very important stipulation which touches upon the very substance of the Convention, because it excludes recourse to common law; originally it was a separate article. 2 *Second International Conference of Private Air Law Minutes* 368 (1930) (quoted in *Jack*, 820 F.Supp. at 1226). However, Judge Caulfield turned to the Dennis statement only after determining that Article 24's authentic (French) text was ambiguous. *See Jack*, 820 F.Supp. at 1221. The Court does not agree that the authentic text is ambiguous.

Judge Caulfield notes the multiple meanings of the French word "conditions," and posits that Article 24 may mean that "actions 'however pleaded' will be considered to have been

brought *on the basis of the Convention." Id.* (emphasis added). After reviewing the original French text of Article 24—paragraph one of the French version provides that "[d]ans les cas prevus aux articles 18 et 19 toute action en responsabilite, a quelque titre que ce soit, ne peut etre exercee que dans les conditions et limites prevues par la presente Convention"—this Court finds nothing in such language that compels, or even implies, complete preemption. Indeed, although Judge Caulfield focused on the possible meanings of the French word "conditions," this court finds the operative words in the French text to be "toute action en responsabilite, a quelque titre que ce soit"—which translates to "any action in liability, however founded."

Because this Court does not find the original French text ambiguous, the legislative history of the Convention need not be considered. Moreover, as stated above, the plain language of the text suggests the drafters' intent that the Warsaw Convention *not* be exclusive.

uniformity, the Court finds that the Convention's objective of uniformity does not lead to a finding of complete preemption.

■ Similarly, the second element of non-express preemption, i.e., congressional design to preempt the field, is also lacking. Indeed, as discussed above, if anything, the drafters of the Warsaw Convention had a design *not* to preempt the field. Therefore, the Court does not find complete preemption on this ground either.

■ Finally, so long as state law is interpreted to limit liability to the amount available under the Warsaw Convention, state law does not actually and directly conflict with the Convention. Thus, the third element for preemption is not satisfied.

### III. Conclusion

■ For all of the reasons set forth above, the Court hereby ORDERS that this action is REMANDED to the Superior Court of the State of California for the County of Los Angeles, Van Nuys Branch.[3] In light of this Order, all motions currently pending in this matter are hereby VACATED as moot.

**SO ORDERED.**

---

3. Although the parties did not raise the issue, the Court notes that it may not exercise removal jurisdiction on the basis of diversity of citizenship because, according to Plaintiffs' original State Court complaint, Defendant Thomason Aircraft Corporation "was and is a California corporation having its principal place of business in Los Angeles, California." Complaint at ¶ 4. Even if there is complete diversity—which can-

not be determined from the face of the Complaint—removal is allowed "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). Therefore, because Defendant Thomason Aircraft Corporation appears to be a citizen of the forum state, the instant action may not be removed on the basis of diversity jurisdiction.