United States Court of Appeals,

Fifth Circuit.

No. 95-50934.

Elizabeth POTTER, Plaintiff-Appellant,

v.

DELTA AIR LINES, INC., Defendant-Appellee.

Nov. 6, 1996.

Appeal from the United States District Court for the Western District of Texas.

Before KING, SMITH and WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Elizabeth Potter appeals a summary judgment in favor of Delta Air Lines, Inc. ("Delta"), on her Warsaw Convention and state law negligence claims. Finding no error, we affirm.

I.

As part of a tour package, Elizabeth and James Potter bought a round-trip airline ticket to Europe. During a flight from Atlanta to Dallas, as part of the European trip, Mrs. Potter was seated in row 22, seat A (the window seat). Her husband was in row 22, seat B (the aisle seat). A "rude," "hostile," and "intimidating" man occupied seat 21-B, directly in front of Mr. Potter. The rude man had caused a scene at the beginning of the flight by having a confrontation with the woman sitting next to him in seat 21-A. The flight attendant had moved the woman to another seat, and another passenger had taken her place.

About one hour into the flight, Mrs. Potter went to the lavatory. When she returned, the passengers in seats 21-A and 21-B had fully reclined their seats.[1] The rude man in 21-B, the aisle seat, was asleep. Then, in Mrs. Potter's counsel's words:

> Mrs. Potter's husband was going to have the man move his seat forward, but Mrs. Potter did not want that to happen for fear of the way that man acted earlier on the flight. Because of the confrontation, she did not wish to engage the man in conversation, nor to wake him when he was asleep.

---

[1]The seats may have been reclined when Mrs. Potter left for the lavatory.

Instead, Mr. Potter got up so that Mrs. Potter could pass.[2]

As Mrs. Potter turned to enter the row and sit down, she twisted her knee. Specifically, her foot remained anchored to the carpet in the aisle while the rest of her body turned, resulting in a torn knee ligament.

## II.

Mrs. Potter seeks damages from Delta for the injury. She filed suit in Texas state court, alleging claims under state law and the Warsaw Convention.[3] Delta originally removed the action on the basis of diversity jurisdiction and later added federal question jurisdiction as a basis for removal.[4]

The district court denied Mrs. Potter's motion to remand. Delta moved for summary judgment and for protection from discovery, stating specific objections to Mrs. Potter's interrogatories. Mrs. Potter responded, filing affidavits and deposition excerpts. The district court, on Mrs. Potter's motion, permitted her to file additional summary judgment evidence and extended the time for doing so. The court then granted Delta's motion for protection, denying Mrs. Potter discovery on certain issues, including—*inter alia*—the design and manufacture of the airplane seats and carpet.

Finally, the court granted summary judgment to Delta, making two relevant holdings. First, the court held that the Warsaw Convention supplied the exclusive cause of action for Mrs. Potter's injury—*i.e.,* that the Convention completely preempts state law where the former applies, and that the Convention applies here. Second, the court held that Mrs. Potter had failed to prove an element of her Warsaw Convention cause of action—*i.e.,* that an "accident," as that term is used in the Convention, caused her injury.

## III.

[2]Neither Mrs. Potter nor Delta specified whether Mr. Potter (1) stood up without exiting the row or (2) actually exited the row and stood in the aisle.

[3]Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1949, 49 Stat. 3000, T.S. No. 876 (1934), 49 U.S.C.App. § 1502 note.

[4]The Warsaw Convention is a treaty of the United States, *see Swaminathan v. Swiss Air Transp. Co.,* 962 F.2d 387, 390 (5th Cir.1992), the interpretation of which is a federal question, *see* 28 U.S.C. § 1331 (1993).

We review a grant of summary judgment *de novo.* *See Hanks v. Transcontinental Gas Pipe Line Corp.,* 953 F.2d 996, 997 (5th Cir.1992). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c).

Mrs. Potter first contests the holding on her Warsaw Convention claim, arguing that she did show that her injury was caused by an "accident," as such term is used in article 17 of the Convention.[5] Liability under article 17 "arises only if a passenger's injury is caused by an unexpected or unusual *event or happening* that is external to the passenger." *Saks,* 470 U.S. at 405, 105 S.Ct. at 1345 (emphasis added). Because this definition is to applied flexibly, and because "[a]ny injury is the product of a chain of causes, [ ] we require only that the passenger be able to prove that some link in the chain was an unusual or unexpected *event* external to the passenger." *Id.* at 406, 105 S.Ct. at 1346 (emphasis added).

Mrs. Potter argues that the rude, hostile man sleeping in the fully reclined seat in the row in front was an unusual or unexpected event external to her. Assuming *arguendo* that a rude, hostile passenger is unusual or unexpected, he himself is not an "event or happening." Similarly, neither a fully reclined seat nor the act of sleeping in it is an unusual or unexpected event or happening on an airplane.

Thus, the circumstances of this case simply do not fit into the definition of "accident" established in *Saks.* As a result, Mrs. Potter's Warsaw Convention claim is without merit.

IV.

Having determined that Mrs. Potter has failed to create a genuine issue of material fact regarding whether her injury was the result of an "accident," we now address whether her state law

---

[5] Article 17 provides: "The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injured suffered by a passenger, if the accident which caused the damages so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking." The Supreme Court has noted that the governing text of article 17—indeed, of the entire Convention—is in French. *Air France v. Saks,* 470 U.S. 392, 397, 105 S.Ct. 1338, 1341, 84 L.Ed.2d 289 (1985). Accordingly, the Court set out the French text in the margin, and it may be found there. *See id.* at 394 n. 1, 105 S.Ct. at 1340 n. 1.

claims for negligence are preempted by the exclusive cause of action provided in article 17. Mrs. Potter does not contest that article 17 provides the exclusive remedy for actions maintained under the Warsaw Convention, but she asserts that where an injury is not compensable under article 17, a separate cause of action for damages lies under state law. Whether article 17 preempts all state law causes of action, not just state remedies, is *res nova* in this circuit.

We have held previously that the Warsaw Convention creates the cause of action and exclusive remedy for article 18[6] claims and that it preempts state law "in the areas covered." *Boehringer-Mannheim Diagnostics, Inc., v. Pan American World Airways,* 737 F.2d 456, 458-59 (5th Cir.1984), *cert. denied,* 469 U.S. 1186, 105 S.Ct. 951, 83 L.Ed.2d 959 (1985). We further defined "areas covered" broadly, noting that they encompass the "field" in which the Convention has enacted law. *See id.* at 459. Mrs. Potter notes correctly that the specific holding in *Boehringer-Mannheim* is inapposite to the instant case, both because article 18 covers damage to checked luggage while article 17 covers personal damage and because the language of the two articles differs.

Article 18 covers damages resulting from an "occurrence," whereas article 17 is limited to damages resulting from an "accident." Because "occurrence" extends more broadly to cover most instances of damages to checked luggage, whereas "accident" is limited to "an unexpected or unusual event or happening that is external to the passenger," *see Saks,* 470 U.S. at 405, 105 S.Ct. at 1345, Mrs. Potter asserts that most problems associated with checked luggage will be reparable under article 18, making recourse to state law for noncognizable claims merely duplicative.

Given article 18's broad scope, Mrs. Potter thus argues that the *Boehringer-Mannheim* court properly construed article 24(1)[7] to preempt state law "in the areas covered" by the Warsaw Convention. *Boehringer-Mannheim,* 737 F.2d at 458. She reasons that because state law causes of action will not be cumulative where there is no "accident" under the Convention, they should not be

---

[6]Article 18 provides: "(1) The carrier shall be liable for damage sustained in the event of the destruction of loss of, or of damage to, any checked baggage or any goods, if the occurrence which caused the damage so sustained took place during the transportation by air."

[7]Article 24(1) provides: "In the cases covered by articles 18 and 19 any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention."

preempted.  Mrs. Potter thus reads the preemption language in article 24(2)[8] to prohibit state law causes of action only where a claim has been adjudicated an "accident" and deemed compensable under the Warsaw Convention.[9]  We disagree.

We note first that " "treaties are construed more liberally than private agreements, and to ascertain their meaning we may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties.' "  *Saks,* 470 U.S. at 396, 105 S.Ct. at 1341 (citation omitted).  "The terms of the convention must be construed broadly in order to advance its goals."  *Floyd v. Eastern Airlines,* 872 F.2d 1462, 1473 (11th Cir.1989) (citation omitted), *rev'd on other grounds,* 499 U.S. 530, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991).

Because the Convention has not expressly preempted state law, we examine the test for non-express preemption, which requires that we determine whether (1) the area requires uniformity vital to national interests such that allowing state regulation "would create potential frustration of national purposes," *see San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959);  (2) there is evidence of congressional design to preempt the field, *see Jones v. Rath Packing Co.,* 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977); or (3) the state statute actually conflicts with the federal provision.  *See Block v. Compagnie Nationale Air France,* 386 F.2d 323 (5th Cir.1967), *cert. denied,* 392 U.S. 905, 88 S.Ct. 2053, 20 L.Ed.2d 1363 (1968). We conclude that the subject matter of the Convention requires uniformity and thus provides the exclusive cause of action under article 17 for personal injuries and death.

A primary function of the Warsaw Convention is to foster uniformity in the laws governing

---

[8]Article 24(2) provides:  "In the cases covered by article 17 the provisions of the preceding paragraph shall also apply, without prejudice to the questions as to who are the persons who have the right to bring suit and what are their respective rights."

[9]Mrs. Potter errs in citing to the publisher's headnote 2 of *Luna v. Compania Panamena De Aviacion, S.A.,* 851 F.Supp. 826 (S.D.Tex.1994), in support of her argument that plaintiffs have access to state law causes of action for non-accidents.  Headnotes, however, are written by the publisher, not the court.  *See United States v. Detroit Lumber Co.,* 200 U.S. 321, 337, 26 S.Ct. 282, 287, 50 L.Ed. 499 (1906) ("[T]he headnote is not the work of the court, nor does it state its decision....  It is simply the work of the reporter, gives his understanding of the decision, and is prepared for the convenience of the profession in the examination of the reports.")  We do not counsel citations to headnotes.

international air carrier liability. *See Zicherman v. Korean Air Lines Co.,* --- U.S. ----, ----, 116 S.Ct. 629, 636, 133 L.Ed.2d 596 (1996); *Swaminathan,* 962 F.2d at 390; *In re Air Disaster at Lockerbie, Scotland on Dec. 21, 1988,* 928 F.2d 1267, 1275 (2d Cir.), *cert. denied,* 502 U.S. 920, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991); *Eastern Airlines,* 872 F.2d at 1473; *Boehringer-Mannheim,* 737 F.2d at 459. Uniformity with respect to liability is required in order to allow airlines to raise the capital needed to expand operations and to provide a definite basis upon which their insurance rates can be calculated. *See In re Air Disaster,* 928 F.2d at 1270-71 (citation omitted).

The Convention's goals of uniformity and certainty would be frustrated were we to allow Mrs. Potter to assert her state law claims, even where the Convention does not provide her a remedy. First, as the Second Circuit has recognized with respect to the unavailability of punitive damages under article 17, recourse to state law "would sink federal courts into a Syrtis bog where they would not know whether they were at sea or on good dry land when deciding what law a plaintiff can rely upon, what law the court itself should apply, and why." *Id.* at 1276 (citation omitted); *see also Eastern Airlines,* 872 F.2d at 1488.

The Convention's express limitation on individual recovery of $75,000, *see* article 22(1), would be circumvented entirely, and airlines would be subject to distinct choice of law rules and substantive law provisions depending upon the forum in which suit was brought. Because article 28 permits a plaintiff to bring suit where the carrier is domiciled or has a principal place of business, where the carrier has a place of business through which the contract was made, or before a court at the place of destination, plaintiffs, if permitted to file state law causes of action, could forum-shop for jurisdictions with friendly substantive laws on recovery of damages for personal injury and thus could undermine the Convention's goal of uniformity.[10] Plaintiffs could plead artfully their complaints

---

[10]Cognizant of this fact, courts addressing choice of law issues have applied a federal choice of law rule. *See Bickel v. Korean Air Lines Co.,* 83 F.3d 127, 130 (6th Cir.1996) ("The Warsaw Convention, however, embodies a concrete federal policy of uniformity and certainty, which would be undermined by the use of state choice of law rules."); *In re Air Disaster,* 928 F.2d at 1274 ("[W]e see no reason to believe that the drafters meant to denote the laws of *subdivisions* within nations.... "The basis unit of international law is the nation-states and it is fair to assume, absent clear indications to the contrary, that [the Convention] was written with reference to nation-states, and not to areas and subdivisions of nation-states.' ") (citations omitted).

to avoid characterizing the damages as resulting from an "accident," thereby creating an opt-out from the Convention's liability constraints.

Furthermore, where the drafters of the Convention concluded that uniformity could not be achieved, they provided expressly for recourse to local law. *See Zicherman,* --- U.S. at ----, 116 S.Ct. at 634; *Jack v. Trans World Airlines,* 820 F.Supp. 1218 (N.D.Cal.1993). Article 24(2), which expressly reserves to local law[11] "the questions as to who are the persons who have the right to bring suit and what are their respective rights," is one such provision.[12]

Because, before the Convention, passengers who were injured and merchants whose goods were damaged could sue for damages in either tort or contract, and because the Convention's express cause of action required that these plaintiffs proceed under a contract theory only, article 24(2) was intended to permit a deceased passenger's heirs, who lack contractual privity with the carrier, to derive their standing to sue from other sources of law. *See Jack,* 820 F.Supp. at 1222. "At some point in the debates, the experts abandoned their attempt to include a choice of law provision in Article 27 [the predecessor to article 24], and instead deleted Article 27's second half, leaving each member nation free to determine for itself the persons entitled to assert a claim for wrongful death." *Id.* at 1222-23.[13] Notwithstanding the drafters' inability to define a uniform standing provision for wrongful death, they were careful to limit recourse to member nation's standing law only, noting expressly that actions under article 17, "however founded, can only be brought subject to the conditions and limits set out in this convention."

---

[11]Article 24(2) provides a pass-through, authorizing courts to apply the federal law that would govern in the absence of the Convention. *Zicherman,* --- U.S. at ----, 116 S.Ct. at 636.

[12]We disagree with Mrs. Potter that article 24 has two subparts because there are different liability standards under articles 17 and 18. Article 24(2) was made necessary by the inability of the Convention to provide a uniform standing law for wrongful death claimants, not because, as Mrs. Potter suggests, article 18 imposes strict liability for damages to checked luggage, whereas article 17 requires that personal injury stem from an "accident."

[13]The Convention was first drafted at an international conference in Paris in 1925. This protocol was revised several times by a committee of experts and then resubmitted to a second international conference that convened in Warsaw in 1929. *See Saks,* 470 U.S. at 401, 105 S.Ct. at 1343. The Supreme Court has counseled the use of the Paris protocol in interpreting the meaning of Convention provisions. *See id.*

In support of her argument that article 17 provides the exclusive cause of action and remedy for bodily injury only where the injury was caused by an "accident," Mrs. Potter juxtaposes article 18's use of the term "occurrence" with article 17's use of "accident." According to Mrs. Potter, the terms are jurisdictional; preemption applies only where there is liability under the Convention. We disagree. The Supreme Court has interpreted the Convention's use of different terms for damages under articles 17 and 18 to reflect a difference in the scope of carrier liability: A standard resembling strict liability attaches to damages to checked luggage, while liability for personal injuries attaches in the event of an accident only. *See Saks,* 470 U.S. at 401-04, 105 S.Ct. at 1343-45.

It is not axiomatic that the Convention's limitation of liability for personal injury to "accidents" connotes an intention to give plaintiffs who are not injured in an "accident" recourse to state law causes of action. In fact, given the Convention's underlying goals of uniformity and certainty in the application of carrier liability law and its use of broad language to sweep into its ambit "all international transportation of persons, baggage, or goods performed by aircraft for hire," *see* article 1(1), quite the opposite is true.

The delegates to the Guatemala City International Conference on Air Law in 1971 recognized as much when they approved an amendment to article 17 that would impose liability on a carrier for an "event which caused the death or injury" rather than for an "accident which caused" the injury. *See id.* at 403-04, 105 S.Ct. at 1344-45 (noting that "[t]he statements of the delegates at Guatemala City indicate that they viewed the switch from "accident' to "event' as expanding the scope of carrier liability to passengers. The Swedish delegate, for example, in referring to the choice between the words "accident' and "event' emphasized that the word "accident' is too narrow because a carrier might be found liable for "other acts which could not be considered accidents'."; and noting that changes in article 17 were intended to establish "strict liability") (citations omitted). Thus, we conclude that article 17 of the Warsaw Convention creates the exclusive cause of action and the exclusive remedy for all international transportation of persons performed by aircraft for hire.

V.

Finally, Mrs. Potter challenges the protective order against certain interrogatories.[14] She claims this was an abuse of discretion,[15] arguing that she "did not have adequate time to perform necessary discovery to oppose Delta's motion for summary judgment" because of the protective order.

Mrs. Potter, however, did not move for a continuance under FED.R.CIV.P. 56(f).[16] We have stated that "[r]ule 56 does not require that any discovery take place before [a motion for] summary judgment can be granted; if a party cannot adequately defend such a motion, Rule 56(f) is his remedy." *Washington v. Allstate Ins. Co.,* 901 F.2d 1281, 1285 (5th Cir.1990).

Some discovery was permitted. If Mrs. Potter needed more discovery in order to defeat summary judgment, it was up to her to move for a continuance pursuant to rule 56(f). Because she did not, she is foreclosed from arguing that she did not have adequate time for discovery.

AFFIRMED.

---

[14]To the extent that the interrogatories were intended to support Mrs. Potter's state law claims of negligence, and because we hold that such causes of action are preempted by the Warsaw Convention, we reject the instant challenge as moot.

[15]*See Doe v. Stegall,* 653 F.2d 180, 184 (5th Cir. Unit A Aug. 1981).

[16]The district court twice granted Mrs. Potter's motion for leave to supplement her response to the motion for summary judgment.