ASANTE TECHNOLOGIES,
INC., Plaintiff,

v.

PMC–SIERRA, INC., Defendant.

No. C 01–20230 JW.

United States District Court,
N.D. California,
San Jose Division.

July 30, 2001.

---

Jeffrey J. Lederman, Gray Cary Ware & Freidenrich, Palo Alto, CA, for plaintiff.

Michael A. Jacobs, Morrison & FOerster, San Francisco, CA, for defendant.

## ORDER DENYING MOTION TO REMAND AND REQUEST FOR ATTORNEYS' FEES

WARE, District Judge.

### I.  INTRODUCTION

This lawsuit arises out of a dispute involving the sale of electronic components. Plaintiff, Asante Technologies Inc., filed the action in the Superior Court for the State of California, Santa Clara County, on February 13, 2001. Defendant, PMC–Sierra, Inc., removed the action to this Court, asserting federal question jurisdiction pursuant to 28 U.S.C. section 1331. Specifically, Defendant asserts that Plaintiff's claims for breach of contract and breach of express warranty are governed by the United Nations Convention on Contracts for the International Sale of Goods ("CISG").  Plaintiff disputes jurisdiction and filed this Motion To Remand And For Attorneys' Fees. The Court conducted a hearing on June 18, 2001.  Based upon the submitted papers and oral arguments of the parties, the Court DENIES the motion to remand and the associated request for attorneys' fees.

### II.  BACKGROUND

The Complaint in this action alleges claims based in tort and contract.  Plaintiff contends that Defendant failed to provide it with electronic components meeting certain designated technical specifications. Defendant timely removed the action to this Court on March 16, 2001.

Plaintiff is a Delaware corporation having its primary place of business in Santa Clara County, California.  Plaintiff produces network switchers, a type of electronic component used to connect multiple

computers to one another and to the Internet. Plaintiff purchases component parts from a number of manufacturers. In particular, Plaintiff purchases application-specific integrated circuits ("ASICs"), which are considered the control center of its network switchers, from Defendant.

Defendant is also a Delaware corporation. Defendant asserts that, at all relevant times, its corporate headquarters, inside sales and marketing office, public relations department, principal warehouse, and most design and engineering functions were located in Burnaby, British Columbia, Canada. Defendant also maintains an office in Portland, Oregon, where many of its engineers are based. Defendant's products are sold in California through Unique Technologies, which is an authorized distributor of Defendant's products in North America. It is undisputed that Defendant directed Plaintiff to purchase Defendant's products through Unique, and that Defendant honored purchase orders solicited by Unique. Unique is located in California. Determining Defendant's "place of business" with respect to its contract with Plaintiff is critical to the question of whether the Court has jurisdiction in this case.

Plaintiff's Complaint focuses on five purchase orders.[1] Four of the five purchase orders were submitted to Defendant through Unique as directed by Defendant. However, Plaintiff does not dispute that one of the purchase orders, dated January 28, 2000, was sent by fax directly to Defendant in British Columbia, and that Defendant processed the order in British Columbia. Defendant shipped all orders to Plaintiff's headquarters in California.[2] Upon delivery of the goods, Unique sent invoices to Plaintiff, at which time Plaintiff tendered payment to Unique either in California or in Nevada.

The Parties do not identify any single contract embodying the agreement pertaining to the sale. Instead, Plaintiff asserts that acceptance of each of its purchase orders was expressly conditioned upon acceptance by Defendant of Plaintiff's "Terms and Conditions," which were included with each Purchase Order. Paragraph 20 of Plaintiff's Terms and Conditions provides "APPLICABLE LAW. The validity [and] performance of this [purchase] order shall be governed by the laws of the state shown on Buyer's address on this order." (Contos Decl., Exh. H, ¶ 16.) The buyer's address as shown on each of the Purchase Orders is in San Jose, California. Alternatively, Defendant suggests that the terms of shipment are governed by a document entitled "PMC–Sierra TERMS AND CONDITIONS OF SALE." Paragraph 19 of Defendant's Terms and conditions provides "APPLICABLE LAW: The contract between the parties is made, governed by, and shall be construed in accordance with the laws of the Province of British Columbia and the laws of Canada applicable therein, which shall be deemed to be the proper law hereof . . . ." (Wechsler Decl., Exh. D, ¶ 6.)

Plaintiff's Complaint alleges that Defendant promised in writing that the chips would meet certain technical specifications. (Compl. ¶¶ 13, 14, 15, 17, 18, 22, 23, & 25.) Defendant asserts that the following documents upon which Plaintiff relies emanated

---

1. The relevant Purchase Orders are: Purchase Order No. 62799, dated November 1998 (Contos Decl., ¶ 6, Exh. A), Purchase Order No. 53527, dated June 1999 (Contos Decl., ¶ 7, Exh. B); Purchase Order No. 53724, dated January 2000 (Contos Decl., ¶ 8, Exh. C); Purchase Order No. 53729, dated February 2000 (Contos Decl., ¶ 9, Exh. D); and Purchase Order No. 63095, dated April 2000 (Contos Decl ., ¶ 10, Exh. E).

2. Plaintiff contends in this suit that the delivered ASICs did not comply with required technical specifications.

from Defendant's office in British Columbia: (1) Defendant's August 24, 1998 press release that it would be making chips available for general sampling (Doucette Decl. ¶ 13); (2) Defendant's periodic updates of technical specifications (Doucette Decl., Exh. H); and (3) correspondence from Defendant to Plaintiff, including a letter dated October 25, 1999. It is furthermore undisputed that the Prototype Product Limited Warranty Agreements relating to some or all of Plaintiff's purchases were executed with Defendant's British Columbia facility. (Doucette Decl., Exhs. B & C.)

Defendant does not deny that Plaintiff maintained extensive contacts with Defendant's facilities in Portland Oregon during the "development and engineering" of the ASICs. (Amended Supplemental Decl. of Anthony Contos, ¶ 3.) These contacts included daily email and telephone correspondence and frequent in-person collaborations between Plaintiff's engineers and Defendant's engineers in Portland. (*Id.*) Plaintiff contends that this litigation concerns the inability of Defendant's engineers in Portland to develop an ASIC meeting the agreed-upon specifications. (*Id.*)

Plaintiff now requests this Court to remand this action back to the Superior Court of the County of Santa Clara pursuant to 28 U.S.C. section 1447(c), asserting lack of subject matter jurisdiction. In addition, Plaintiff requests award of attorneys fees and costs for the expense of bringing this motion.

### III. STANDARDS

A defendant may remove to federal court any civil action brought in a state court that originally could have been filed in federal court. 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). When a case originally filed in state court contains separate and independent federal and state law claims, the entire case may be removed to federal court. 28 U.S.C. 1441(c).

The determination of whether an action arises under federal law is guided by the "well-pleaded complaint" rule. *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). The rule provides that removal is proper when a federal question is presented on the face of the Complaint. *Id.* at 9, 103 S.Ct. 2841. However, in areas where federal law completely preempts state law, even if the claims are purportedly based on state law, the claims are considered to have arisen under federal law. *Ramirez v. Fox Television Station, Inc.,* 998 F.2d 743 (9th Cir. 1993). Defendant has the burden of establishing that removal is proper. *Gaus v. Miles, Inc.,* 980 F.2d 564 (9th Cir.1992). If, at any time before judgment, the district court determines that the case was removed from state court improvidently and without jurisdiction, the district court must remand the case. 28 U.S.C. § 1447(c).

The Convention on Contracts for the International Sale of Goods ("CISG") is an international treaty which has been signed and ratified by the United States and Canada, among other countries. The CISG was adopted for the purpose of establishing "substantive provisions of law to govern the formation of international sales contracts and the rights and obligations of the buyer and the seller ." U.S. Ratification of 1980 United Nations Convention on Contracts for the International Sale of Goods: Official English Text, 15 U.S.C.App. at 52 (1997). The CISG applies "to contracts of sale of goods between parties whose places of business are in different States ... when the States are Contracting States." 15 U.S.C.App., Art.

1(1)(a). Article 10 of the CISG provides that "if a party has more than one place of business, the place of business is that which has the closest relationship to the contract and its performance." 15 U.S.C.App. Art. 10.

## IV. DISCUSSION

■ Defendant asserts that this Court has jurisdiction to hear this case pursuant to 28 U.S.C. section 1331, which dictates that the "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Specifically, Defendant contends that the contract claims at issue necessarily implicate the CISG, because the contract is between parties having their places of business in two nations which have adopted the CISG treaty. The Court concludes that Defendant's place of business for the purposes of the contract at issue and its performance is Burnaby, British Columbia, Canada. Accordingly, the CISG applies. Moreover, the parties did not effectuate an "opt out" of application of the CISG. Finally, because the Court concludes that the CISG preempts state laws that address the formation of a contract of sale and the rights and obligations of the seller and buyer arising from such a contract, the well-pleaded complaint rule does not preclude removal in this case.

*A. Federal Jurisdiction Attaches to Claims Governed By the CISG*

■ Although the general federal question statute, 28 U.S.C. § 1331(a), gives district courts original jurisdiction over every civil action that "arises under the . . . treaties of the United States," an individual may only enforce a treaty's provisions when the treaty is self-executing, that is, when it expressly or impliedly creates a private right of action. *See Tel–Oren v. Libyan Arab Republic,* 726 F.2d 774, 808 (D.C.Cir.1984) (Bork, J., concurring); *Handel v. Artukovic,* 601 F.Supp. 1421, 1425 (C.D.Cal.1985). The parties do not dispute that the CISG properly creates a private right of action. *See Delchi Carrier v. Rotorex Corp.,* 71 F.3d 1024, 1027–28 (2d Cir.1995); *Filanto, S.p.A. v. Chilewich Int'l Corp.,* 789 F.Supp. 1229, 1237 (S.D.N.Y.1992); U.S. Ratification of 1980 United Nations Convention on Contracts for the International Sale of Goods: Official English Text, 15 U.S.C.App. at 52 (1997) ("The Convention sets out substantive provisions of law to govern the formation of international sales contracts and the rights and obligations of the buyer and seller. It will apply to sales contracts between parties with their places of business in different countries bound by Convention, provided the parties have left their contracts silent as to applicable law."). Therefore, if the CISG properly applies to this action, federal jurisdiction exists.[3]

*B. The Contract In Question Is Between Parties From Two Different Contracting States*

The CISG only applies when a contract is "between parties whose places of business are in different States."[4] 15 U.S.C.App., Art. 1(1)(a). If this requirement is not satisfied, Defendant cannot claim jurisdiction under the CISG. It is undisputed that Plaintiff's place of business is Santa Clara County, California,

---

3. Diversity cannot serve as a basis for jurisdiction in this case, because both parties are incorporated in the state of Delaware. *See Bank of California Nat'l Ass'n v. Twin Harbors Lumber Co.,* 465 F.2d 489, 491–92 (9th Cir. 1972).

4. In the context of the CISG, "different States" refers to different countries. U.S. Ratification of 1980 United Nations Convention on Contracts for the International Sale of Goods: Official English Text, 15 U.S.C.App. at 52 (1997).

U.S.A. It is further undisputed that during the relevant time period, Defendant's corporate headquarters, inside sales and marketing office, public relations department, principal warehouse, and most of its design and engineering functions were located in Burnaby, British Columbia, Canada. However, Plaintiff contends that, pursuant to Article 10 of the CISG, Defendant's "place of business" having the closest relationship to the contract at issue is the United States.[5]

The Complaint asserts *inter alia* two claims for breach of contract and a claim for breach of express warranty based on the failure of the delivered ASICS to conform to the agreed upon technical specifications. (Compl.¶¶ 40–53.) In support of these claims, Plaintiff relies on multiple representations allegedly made by Defendant regarding the technical specifications of the ASICS products at issue. Among the representations are: (1) an August 24, 1998 press release (*Id.,* ¶ 13); (2) "materials" released by Defendant in September, 1998 (*Id.,* ¶ 14); (3) "revised materials" released by Defendant in November 1998 (*Id.,* ¶ 15); (4) "revised materials" released by Defendant in January, 1999 (*Id.,* ¶ 17); (5) "revised materials" released by Defendant in April, 1999 (*Id.,* ¶ 18); (6) a September, 1999 statement by Defendant which included revised specifications indicating that its ASICS would comply with 802.1q VLAN specifications (*Id.,* ¶ 22); (7) a statement made by Defendant's President and Chief Executive Officer on October 25, 1999 (*Id.,* ¶ 23); (8) a communication of December, 1999 (*Id.,* ¶ 24); and (9) "revised materials" released by Defendant in January, 2000 (*Id.,* ¶ 25). It appears undisputed that each of these alleged representations regarding the technical speci-

fications of the product was issued from Defendant's headquarters in British Columbia, Canada. (*See* Opposition Brief at 3.)

Rather than challenge the Canadian source of these documents, Plaintiff shifts its emphasis to the purchase orders submitted by Plaintiff to Unique Technologies, a nonexclusive distributor of Defendant's products. Plaintiff asserts that Unique acted in the United States as an agent of Defendant, and that Plaintiff's contacts with Unique establish Defendant's place of business in the U.S. for the purposes of this contract.

Plaintiff has failed to persuade the Court that Unique acted as the agent of Defendant. Plaintiff provides no legal support for this proposition. To the contrary, a distributor of goods for resale is normally not treated as an agent of the manufacturer. Restatement of the Law of Agency, 2d § 14J (1957) ("One who receives goods from another for resale to a third person is not thereby the other's agent in the transaction."); *Stansifer v. Chrysler Motors Corp.,* 487 F.2d 59, 64–65 (9th Cir.1973) (holding that nonexclusive distributor was not agent of manufacturer where distributorship agreement expressly stated "distributor is not an agent"). Agency results "from the manisfestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement of the Law of Agency, 2d, § 1 (1957). Plaintiff has produced no evidence of consent by Defendant to be bound by the acts of Unique. To the contrary, Defendant cites the distributorship agreement with Unique, which ex-

---

5.  Article 10 of the CISG states *inter alia:*
    For the purposes of this Convention:
    (a) If a party has more than one place of business, the place of business is that which has the closest relationship to the contract and its performance, having regard to the circumstances known to or contemplated by the parties at any time before or at the conclusion of the contract.

pressly states that the contract does not "allow Distributor to create or assume any obligation on behalf of [Defendant] for any purpose whatsoever." (Doucette Decl. Exh. M, ¶ 1.6(b).) Furthermore, while Unique may distribute Defendant's products, Plaintiff does not allege that Unique made any representations regarding technical specifications on behalf of Defendant. Indeed, Unique is not even mentioned in the Complaint. To the extent that representations were made regarding the technical specifications of the ASICs, and those specifications were not satisfied by the delivered goods, the relevant agreement is that between Plaintiff and Defendant. Accordingly, the Court finds that Unique is not an agent of Defendant in this dispute. Plaintiff's dealings with Unique do not establish Defendant's place of business in the United States.

Plaintiff's claims concern breaches of representations made by Defendant from Canada. Moreover, the products in question are manufactured in Canada, and Plaintiff knew that Defendant was Canadian, having sent one purchase order directly to Defendant in Canada by fax. Plaintiff supports its position with the declaration of Anthony Contos, Plaintiff's Vice President of Finance and Administration, who states that Plaintiff's primary contact with Defendant "during the development and engineering of the ASICs at issue … was with [Defendant's] facilities in Portland, Oregon." (Contos Amended Supplemental Decl. ¶ 3.) The Court concludes that these contacts are not sufficient to override the fact that most if not all of Defendant's alleged representations regarding the technical specifications of the products emanated from Canada. (*See supra* at 7:1–12.) Moreover, Plaintiff directly corresponded with Defendant at Defendant's Canadian address. (*See* Doucette Decl. ¶ 15.) Plaintiff relies on all of these alleged representations at length in its Complaint. (*See supra* at 7:1–12.) In contrast, Plaintiff has not identified any specific representation or correspondence emanating from Defendant's Oregon branch. For these reasons, the Court finds that Defendant's place of business that has the closest relationship to the contract and its performance is British Columbia, Canada. Consequently, the contract at issue in this litigation is between parties from two different Contracting States, Canada and the United States. This contract therefore implicates the CISG.

## C. The Effect of the Choice of Law Clauses

Plaintiff next argues that, even if the Parties are from two nations that have adopted the CISG, the choice of law provisions in the "Terms and Conditions" set forth by both Parties reflect the Parties' intent to "opt out" of application of the treaty.[6] Article 6 of the CISG provides that "[t]he parties may exclude the application of the Convention or, subject to Article 12, derogate from or vary the effect of any of its provisions." 15 U.S.C.App., Art. 6. Defendant asserts that merely choosing the law of a jurisdiction is insufficient to opt out of the CISG, absent ex-

---

6. Plaintiff's Terms and Conditions provides "APPLICABLE LAW. The validity [and] performance of this [purchase] order shall be governed by the laws of the state shown on Buyer's address on this order." (Contos Decl. ¶ 16, Exh. H.) The buyer's address as shown on each of the Purchase Orders is San Jose, California. (Contos Decl. ¶¶ 6, 7, 8, 9, 10; Exhs. A, B, C, D, E.)

Defendant's Terms and Conditions provides "APPLICABLE LAW: The contract between the parties is made, governed by, and shall be construed in accordance with the laws of the Province of British Columbia and the laws of Canada applicable therein, which shall be deemed to be the proper law hereof …." (Wechsler Decl. ¶ 6, Exh. D.) It is undisputed that British Columbia has adopted the CISG.

press exclusion of the CISG. The Court finds that the particular choice of law provisions in the "Terms and Conditions" of both parties are inadequate to effectuate an opt out of the CISG.

Although selection of a particular choice of law, such as "the California Commercial Code" or the "Uniform Commercial Code" *could* amount to implied exclusion of the CISG, the choice of law clauses at issue here do not evince a clear intent to opt out of the CISG. For example, Defendant's choice of applicable law adopts the law of British Columbia, and it is undisputed that the CISG *is* the law of British Columbia. (International Sale of Goods Act ch. 236, 1996 S.B.C. 1 *et seq.* (B.C.).) Furthermore, even Plaintiff's choice of applicable law generally adopts the "laws of" the State of California, and California is bound by the Supremacy Clause to the treaties of the United States. U.S. Const. art. VI, cl. 2 ("This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land.") Thus, under general California law, the CISG is applicable to contracts where the contracting parties are from different countries that have adopted the CISG. In the absence of clear language indicating that both contracting parties intended to opt out of the CISG, and in view of Defendant's Terms and Conditions which would apply the CISG, the Court rejects Plaintiff's contention that the choice of law provisions preclude the applicability of the CISG.

**D.  *Federal Jurisdiction Based Upon the CISG Does Not Violate the Well–Pleaded Complaint Rule***

▆▆▆▆  The Court rejects Plaintiff's argument that removal is improper because of the well-pleaded complaint rule. The rule states that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law. *Gully v. First National Bank,* 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Anticipation of a federal preemption defense, such as the defense that federal law prohibits the state claims, is insufficient to establish federal jurisdiction. *Gully,* 299 U.S. at 116, 57 S.Ct. 96. Even where both parties concede that determination of a federal question is the only issue in the case, removal is improper unless the plaintiff's complaint establishes that the case "arises under" federal law. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

It is undisputed that the Complaint on its face does not refer to the CISG. However, Defendants argue that the preemptive force of the CISG converts the state breach of contract claim into a federal claim. Indeed, Congress may establish a federal law that so completely preempts a particular area of law that any civil complaint raising that select group of claims is necessarily federal in character. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 62, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (holding that Employee Retirement Income Security Act (ERISA) preempts an employee's common-law contract and tort claims arising from employer's insurer's termination of disability benefits, establishing federal jurisdiction); *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n. of Machinists,* 390 U.S. 557, 560, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (holding that section 301 of Labor Management Relations Act (LMRA) preempts any state cause of action for violation of contracts between an employer and a labor organization).

▆▆▆▆  It appears that the issue of whether or not the CISG preempts state law is a matter of first impression. In the case of federal statutes, "[t]he question of

whether a certain action is preempted by federal law is one of congressional intent. The purpose of Congress is the ultimate touchstone." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (internal quotations and citations omitted). Transferring this analysis to the question of preemption by a treaty, the Court focuses on the intent of the treaty's contracting parties. *See Husmann v. Trans World Airlines, Inc.*, 169 F.3d 1151, 1153 (8th Cir.1999) (finding Warsaw Convention preempts state law personal injury claim); *Jack v. Trans World Airlines, Inc.*, 820 F.Supp. 1218, 1220 (N.D.Cal.1993) (finding removal proper because Warsaw Convention preempts state law causes of action).

■ In the case of the CISG treaty, this intent can be discerned from the introductory text, which states that "the adoption of uniform rules which govern contracts for the international sale of goods and take into account the different social, economic and legal systems would contribute to the removal of legal barriers in international trade and promote the development of international trade." 15 U.S.C.App. at 53. The CISG further recognizes the importance of "the development of international trade on the basis of equality and mutual benefit." *Id.* These objectives are reiterated in the President's Letter of Transmittal of the CISG to the Senate as well as the Secretary of State's Letter of Submittal of the CISG to the President. *Id.* at 70–72. The Secretary of State, George P. Shultz, noted:

> Sales transactions that cross international boundaries are subject to legal uncertainty-doubt as to which legal system will apply and the difficulty of coping with unfamiliar foreign law. The sales contract may specify which law will apply, but our sellers and buyers cannot expect that foreign trading partners will always agree on the applicability of United States law.... The Convention's approach provides an effective solution for this difficult problem. When a contract for an international sale of goods does not make clear what rule of law applies, the Convention provides uniform rules to govern the questions that arise in making and performance of the contract.

*Id.* at 71. The Court concludes that the expressly stated goal of developing uniform international contract law to promote international trade indicates the intent of the parties to the treaty to have the treaty preempt state law causes of action.

The availability of independent state contract law causes of action would frustrate the goals of uniformity and certainty embraced by the CISG. Allowing such avenues for potential liability would subject contracting parties to different states' laws and the very same ambiguities regarding international contracts that the CISG was designed to avoid. As a consequence, parties to international contracts would be unable to predict the applicable law, and the fundamental purpose of the CISG would be undermined. Based on very similar rationale, courts have concluded that the Warsaw Convention preempts state law causes of action. *Husmann*, 169 F.3d at 1153; *Shah v. Pan American World Services, Inc.*, 148 F.3d 84, 97–98 (2d Cir. 1998); *Potter v. Delta Air Lines*, 98 F.3d 881, 885 (5th Cir.1996); *Boehringer–Mannheim Diagnostics v. Pan Am. World*, 737 F.2d 456, 459 (5th Cir.1984). The conclusion that the CISG preempts state law also comports with the view of academic commentators on the subject. *See* William S. Dodge, *Teaching the CISG in Contracts*, 50 J. Legal Educ. 72, 72 (March 2000) ("As a treaty the CISG is federal law, which preempts state common law and the UCC."); David Frisch, *Commercial Common Law, The United Nations Convention on the International*

*Sale of Goods, and the Inertia of Habit,* 74 Tul. L.Rev. 495, 503–04 (1999) ("Since the CISG has the preemptive force of federal law, it will preempt article 2 when applicable.").

Furthermore, the Court has considered Plaintiff's arguments and finds them unpersuasive. Plaintiff argues that the CISG is incomparable to preemption under the Warsaw Convention, because "the CISG leaves open the possibility of other, concurrent causes of action." (Reply Brief at 9.) This argument merely begs the question by assuming that the state law causes of action asserted by Plaintiff are properly brought. Based on the proper applicable legal analysis discussed above, the Court concludes that the pleaded state law claims are preempted.

Plaintiff next claims that the CISG does not completely supplant state law, because the CISG is limited in scope to the formation of the contract and the rights and obligations of the seller and buyer arising from the contract. (*Id.*) Plaintiff's correct observation that the CISG does not concern the validity of the contract or the effect which the contract may have on the property in the goods sold fails to support Plaintiff's conclusion that the CISG does not supplant *any area* of state contract law. Although the CISG is plainly limited in its scope (15 U.S.C.App., Art. 4.), the CISG nevertheless can and does preempt state contract law to the extent that the state causes of action fall within the scope of the CISG. *Compare Franchise Tax Bd.,* 463 U.S. at 22–23, 103 S.Ct. 2841 (holding that ERISA did not preempt the state tax collection suit at issue, because the state causes of action did not fall within the scope of § 502(a) of ERISA) and *Metropolitan Life Ins. Co.,* 481 U.S. at 66, 107 S.Ct. 1542 (relying on *Franchise Tax Bd.* and holding that ERISA preempts all state causes of action within the scope of § 502(a)).

Finally, Plaintiff appears to confuse the matter of exclusive federal jurisdiction with preemption. Plaintiff first asserts that "[i]f ... the CISG is 'state law' ... then the California courts have jurisdiction to adjudicate a case arising under these laws." (Reply Brief at 9.) The matter of whether California courts may have jurisdiction to interpret the CISG is irrelevant to the determination of whether the CISG preempts state law and establishes federal jurisdiction over the case. Even where federal law completely preempts state law, state courts may have concurrent jurisdiction over the federal claim if the defendant does not remove the case to federal court. *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103–04, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). This Court does not hold that it has exclusive jurisdiction over CISG claims. Hence, the Court's conclusion that the CISG preempts state claims is not inconsistent with Plaintiff's examples of the adjudication of CISG-based claims in state court. Plaintiff further asserts that "if the CISG so completely supplants state law as to deny the California courts the opportunity to rule on a CISG cause of action, then the reference to 'state law' in Asante's choice-of-law provision is unambiguous, and the CISG also does not apply." (Reply Brief at 9.) The Court also rejects this claim, as the determination of CISG preemption is wholly independent of the question of whether a choice-of-law clause in a particular contract is ambiguous or not.

The Court concludes that the well-pleaded complaint rule does not preclude federal jurisdiction in this case, because the CISG preempts state law causes of action falling within the scope of the CISG.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand is DENIED. Accord-

ingly, the Request for Attorney's Fees is also DENIED.