Lee Frisch PARKER and Husband,
Edward Parker, Appellants,

v.

PAN AMERICAN WORLD AIRWAYS, INC.,
Appellee.

No. 17330.

Court of Civil Appeals of Texas.

Dallas.

Nov. 7, 1969.

Rehearing Denied Dec. 5, 1969.

Jay S. Fichtner, Berman & Fichtner, Dallas, for appellants.

David Noteware, Thompson, Knight, Simmons & Bullion, Dallas, for appellee.

DIXON, Chief Justice.

Lee Frisch, a feme sole, brought suit against Pan American World Airways, Inc., seeking to recover damages for luggage alleged to have been lost due to Pan American's negligence.

Subsequent to the institution of suit Miss Frisch married Edward Parker. There-

after Edward Parker joined with his wife as a party plaintiff and the style of the suit was changed accordingly. The Parkers are the appellants in this appeal.

In addition to a general denial Pan American by way of special defense, pleaded the terms of the Warsaw Convention of 1929, 49 Stat. 3000, T.S. 876, an international agreement to which United States is a party. The Convention limits the liability of air carriers to passengers in international flights.

A jury returned a verdict finding that Pan American failed to keep a proper lookout for Mrs. Parker's baggage at Dulles International Airport and also failed to provide a guard for the baggage while it was in the open terminal; and that in each instance such failure was negligence and a proximate cause of the loss of the baggage. The jury further found that the reasonable value of the property to Mrs. Parker was $2,627.

The Parkers filed a motion for judgment on the verdict. Pan American also filed a motion for judgment on the verdict, and in addition filed a motion in the alternative for a judgment notwithstanding the verdict. In its motion for judgment on the verdict Pan American asked the court to limit the Parkers' recovery to the sum of $331.60 pursuant to the limitation of liability as found in the Warsaw Convention.

The court rendered judgment for the Parkers for $331.60. The decree signed by the court contains this recitation:

"The Court, after carefully considering the argument and authorities of both parties, is of the opinion that under the verdict of the jury and the uncontroverted facts as adduced at trial that Plaintiffs should have Judgment against Defendant, but that said Judgment should be limited to the extent of liability as found in the Warsaw Convention as it is applicable to this loss."

## FACTS

The material facts are undisputed. Mrs. Parker (nee Frisch) purchased a round trip ticket from New York to Antigua, British West Indies, and return to New York. It was on the return trip that the baggage disappeared.

The plane could not land in New York because Kennedy Airport was closed, but could and did land amidst snow and sleet in Dulles Airport, Washington, D. C. The passengers' luggage was removed from the plane and piled in the center of the terminal. Mrs. Parker saw her suitcase in the pile of luggage. She never saw it again.

Pan American, in order to complete the transportation of its passengers to their scheduled destination in New York, obtained the use of two large buses. Passengers and baggage were loaded onto the two buses for the trip to Kennedy Airport in New York. One stop was made about midway on the bus trip, but no luggage was unloaded until the buses arrived in New York. Mrs. Parker's suitcase was not found. It has never been located.

The ticket for the flight was purchased by Mrs. Parker from a travel agent. An original copy of the ticket was retained by Mrs. Parker and is before us as part of the record. It is described in the testimony as a standard form ticket. On its back are printed what are designated as "CONDITIONS OF CONTRACT." Some of these "CONDITIONS" are as follows:

"2(a) Carriage hereunder is subject to the rules and limitations relating to liability established by the Convention for the Unification of Certain Rules relating to International Carriage by Air, signed at Warsaw October 12, 1929 (hereinafter called 'the Convention'), * * * 2(c) Unless expressly so provided, nothing herein contained shall waive any limitation of liability of carrier existing under the Convention or applicable laws. * * * 4(d) Any liability of carrier is limited to 250 French gold francs (consisting of

65½ milligrams of gold with a fineness of nine hundred thousandths) or its equivalent per Kilogram in the case of checked baggage, * * * unless a higher value is declared in advance and all charges are paid pursuant to carrier's tariffs * * *."

Appellants do not claim that a higher value was declared.

The lost baggage weighed forty-four pounds. The fact is important in computing the limit of liability under the Warsaw Convention.

The 250 gold francs per Kilogram mentioned in the Convention when used as a basis for computing the limit of liability in this case amounts to $331.60, the amount of the judgment rendered in favor of appellants.

Mrs. Parker herself testified that she did not read the ticket. The travel agent simply gave it to her and she put it into her handbag without reading it.

## OPINION

In their first two points on appeal appellants say the trial court erred (1) in rendering judgment notwithstanding the verdict and limiting appellants' recovery to $331.60 because there is probative evidence in the record to support the jury's finding that appellants sustained damages in the sum of $2,627; and (2) in disregarding the jury's answer to the damage issue, because appellee failed to make a motion to disregard such issue. We are unable to agree with appellants.

Rule 301, Vernon's Texas Rules of Civil Procedure, states that the judgment shall *conform* to verdict of the jury, but that upon motion and notice the court may render judgment non obstante verdicto *if a directed verdict would have been proper,* and upon like motion may disregard any Special Issue Jury Finding *that has no support in the evidence.*

However it is plain from the record that the court neither rendered judgment non obstante veredicto, nor disregarded the jury's answer to the damage issue. It would have been improper for the court to have directed a verdict in this case; and there was evidence to support the jury's finding that the reasonable value to Mrs. Parker of the personal property in question was $2,-627. Therefore there was no basis for the application of Rule 301 insofar as the rule pertains to a judgment non obstante veredicto, or a judgment disregarding the jury's answer as to the value of the lost baggage. If the court had disregarded said answer it could not have rendered judgment for damages in favor of appellants in any amount whatever.

What the court did, as shown by the recitation in the decree itself, was to render judgment based on the jury's verdict to the limited extent permitted under the Warsaw Convention. This the court had authority to do and no motion was necessary to support such action.

■ If a jury answers a damage issue in an amount in excess of that permitted by law, the judgment must show a sum less than the jury verdict. For example, in Williams v. Wyrick, 151 Tex. 40, 245 S.W. 2d 961 (1952), the jury found damages in an amount greater than the total sum for which the plaintiff sued in his petition. Our Supreme Court held that the trial court properly limited the plaintiff's recovery to the amount for which he sued, though it was less than the jury verdict. In so holding the Supreme Court said, "In order to *conform* to the verdict it is not necessary that the judgment be for the same amount of damages as assessed by the jury." (Emphasis ours.) See also Dozier v. Jarman, 254 S.W.2d 569, 570 (Tex.Civ.App., Amarillo 1952, no writ); Kleiner v. Eubank, 358 S.W.2d 902, 907 (Tex.Civ.App., Austin 1962, writ ref'd n. r. e.). Appellants' first two points are overruled.

In their third, fourth and seventh points of error appellants take the position that the court erred in its application of Articles 1, 18 and 22 of the Warsaw Convention to

support its judgment non obstante veredicto because (3) there was no evidence to show that appellee's limited liability under the Convention was less than the amount of damages found by the jury; (4) *as a matter of law* appellants did not have *clear* and *conspicuous notice* of the limitation of liability contained in the Convention; and (7) as a matter of law the flight terminated at Dulles Airport in Washington, D. C. and the uncontroverted evidence shows that the baggage disappeared after termination. Again we are unable to agree with appellants.

Article 1 of the Convention provides in substance that the Convention applies to all international transportation of persons and baggage by aircraft for hire. Article 18 provides that transportation by air shall comprise the period during which the baggage is in charge of the carrier, whether in an airport, or on board an aircraft, or, in the case of a landing outside an airport, in any place whatsoever. Article 22 among other things states in detail how the limit of liability is to be determined with regard to loss of baggage.

The Warsaw Convention is the law of the land with respect to international air transportation* and courts may not ignore its provisions. Seth v. British Overseas Airways Corp., 329 F.2d 302 (U.S.Ct. of App., 1st Cir. 1964, cert. denied 379 U.S. 858, 85 S.Ct. 114, 13 L.Ed.2d 61); Grey v. American Airlines, Inc., 95 F.Supp. 756 (D.C.1950) (aff'd 227 F.2d 282, 2d Cir. 1955, Cert. denied, 350 U.S. 989, 76 S.Ct. 476, 100 L.Ed. 855, (1956); Ross v. Pan American Airways, 299 N.Y. 88, 85 N.E.2d 880, 13 A.L.R.2d 319 (1949); 8 Tex.Jur.2d 106; 13 A.L.R.2d 337, 344; 8 Am.Jur.2d 634, 738; 4 Baylor Law Rev. 526.

We find no basis for appellants' claim in their third point that there was no evidence to show that the limited liability under the Convention was less in amount than the finding of damages by the jury. Mrs. Parker herself testified that the weight of the lost baggage was forty-four pounds, which is substantially twenty Kilograms. The Convention limits the liability to 250 French gold francs per Kilogram. Thus it became a mere arithmetical exercise to determine that the limited liability in this case was $331.60. 1 Kreindler, Aviation Accident Law, Sec. 11.03(2) (1963). The court undoubtedly had the power to perform this arithmetical exercise in arriving at the amount of the judgment. The courts take judicial notice of the value of foreign money, past and present, in terms of our own money. 29 Am.Jur.2d 113, and cases there cited.

Appellants contend that the trial court erred in applying the Warsaw Convention's limit of liability because as a matter of law the statements in regard to liability on the back of appellants' ticket and baggage check failed to give Mrs. Parker notice of the limit of liability provided in the Convention. This point was raised and overruled in Seth v. British Overseas Airways Corp., 329 F.2d 302, 307 (U.S.Ct. of App., 1st Cir. 1964, Cert. denied 379 U.S. 858, 85 S.Ct. 114, 13 L.Ed.2d 61).

In support of their contention appellants rely on the holdings in Egan v. American Airlines, Inc., 21 N.Y.2d 160, 287 N.Y.S.2d 14, 234 N.E.2d 199 (1967) (Cert. denied 390 U.S. 1039, 88 S.Ct. 1636, 20 L.Ed.2d 301) and Lisi v. Alitalia-Linee Aeree Italiane, S.p.A., 370 F.2d 508, 513 (U.S.Ct. of App., 2nd Cir. 1966, rehearing denied 391 U.S. 929, 88 S.Ct. 1801, 20 L.Ed.2d 671). In

---

* In 1965 the United States denounced the Convention because of the law limit of liability of $8,300 for personal injuries and death, and gave notice of withdrawal from the Convention at the end of six months. However a meeting was held, the limit for personal injuries and death was changed to $58,000 and in case of absolute liability to $75,000. The United States then withdrew its notice of withdrawal and the Convention is still in effect in our country. The limit of liability for loss of baggage was not changed.

each of these cases the court concluded as a matter of law that the statements on the back of the ticket were in print too small to give adequate notice of the application of limited liability pursuant to the provisions of the Convention. In describing the small print before them the courts used such terms as "to virtually be unnoticeable and unreadable"; "so artfully camouflaged that their presence is concealed"; "camouflaged in Lilliputian print in a thicket of 'Conditions of Contract'"; "cannot reasonably be deciphered" and "invisible".

We have concluded that the holdings in the Egan and Lisi cases should not control our holding here. We have so concluded for these reasons:

1. The printing on the back · of the ticket and baggage check in this case, though small, is certainly readable. The three members of this court experienced no difficulty in reading it. We cannot say that as a matter of law the printed matter in question is in such small type as to be concealed, unnoticeable, unreadable, invisible, or that it cannot reasonably be deciphered.

2. Above the body of the printed provisions in large type is the caption or designation of the printed matter below. This designation is printed in capital letters sufficiently large to be easily readable. It is as follows: "CONDITIONS OF CONTRACT". This caption or designation could not be unreadable or unnoticed by anyone able to read or to take notice who would bother to look.

3. It is true that the carrier is required under the terms of the Warsaw Convention to print on the baggage ticket notice of the limitation of liability as to loss of baggage. In this case the carrier complied with this requirement.

4. As we pointed out in our discussion of appellants' first and second points the court did not render a judgment non obstante veredicto.

We see no merit in appellants' assertion in their seventh point that as a matter of law the international flight terminated at the Dulles Airport in Washington and that the uncontroverted evidence shows that the baggage in question disappeared after said termination; hence the terms of the Convention do not apply.

Mrs. Parker bought a round trip ticket from New York to Antigua, British West Indies and return to New York. Being unable to land at the airport in New York on the return trip the plane landed in Washington. The airline in carrying out its obligation to return Mrs. Parker to New York employed the use of two buses to complete the journey. This was in performance of its contract to transport its passengers and their baggage to Kennedy Airport in New York. Thus it was part of the international return trip. Under similar circumstances it is so held in Egan v. American Airlines, Inc., 21 N.Y.2d 160, 287 N.Y.S.2d 14, 234 N.E.2d 199 (1967) (Cert. denied, 390 U.S. 1039, 88 S.Ct. 1636, 20 L.Ed.2d 301), a case relied on by appellants with reference to the question of adequate notice.

Moreover there is no evidence that the baggage disappeared after the alleged termination of the return trip at the Dulles Airport in Washington. It was last seen in the Dulles Airport. It may well have disappeared there. In any event there is no evidence that the baggage disappeared after it left Dulles Airport in Washington.

We overrule appellants' third, fourth and seventh points.

The substance of appellants' fifth point is that the court erred in failing to submit to the jury an issue inquiring whether Mrs. Parker had "clear and conspicuous notice" of the limited liability of the carrier.

Article 4 of the Convention provides that (1) the carrier must deliver a baggage check, (2) made out in duplicate, one part for the passenger, the other part for the carrier and (3) (h) the baggage check shall contain a statement that the transportation is subject to the rules relating to liability

established by the Convention. It is undisputed that the airline company complied with all three of the above requirements. The instrument which Mrs. Parker received is a combination ticket and baggage check.

Appellants rely on the testimony of William Doheny, a salesman employed by British Overseas Airways. While on the witness stand Doheny was asked to look at the ticket. He testified that he had difficulty reading the back of the ticket "without his glasses on." He also gave it as his opinion that the passenger had been unable to read the ticket "if his eyes were somewhat difficult." He also testified that he did not know the meaning of 65½ milligrams of gold per Kilogram.

We do not attach any probative weight to Doheny's testimony. That he could not read the printing on the back of the ticket without his glasses cannot be taken to mean that the printing was not readable. There is no evidence that Mrs. Parker's vision was defective. And the fact that he does not understand the meaning of 65½ milligrams of gold per Kilogram does not invalidate the Warsaw Convention. Appellants' fifth point is overruled.

In their sixth and eighth points appellants assert that the court erred in failing to submit (1) an issue inquiring whether the carrier was grossly negligent in handling the baggage of Mrs. Parker and (2) whether the international flight terminated at Dulles Airport in Washington. A suggested definition of gross negligence was also requested. We see no merit in these points. There is no evidence of gross negligence. And as we have held in deciding appellants' seventh point, the contractual obligation of the airline to transport Mrs. Parker and her baggage from Antigua, British West Indies, to Kennedy Airport in New York continued until it had fully performed its contract. Appellants' sixth and eighth points are overruled.

The judgment of the trial court is affirmed.