**Jerry ROGERS and Jodi Shelton, Plaintiffs,**

v.

**AMERICAN AIRLINES, INC., Defendant.**

No. CIV.A.3:01–CV–1127–M.

United States District Court, N.D. Texas, Dallas Division.

Oct. 29, 2001.

Robert Randolph Cole, Jr., Charles T. Weigel, John L. Fritz, Brady & Cole, Dallas, TX, for Plaintiffs.

William Neil Rambin, Shelby Lyn Bobosky, Sedgwick, Detert, Moran & Arnold, Dallas, TX, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

LYNN, District Judge.

The Court has before it Plaintiffs' Motion to Remand, filed on August 2, 2001. Having considered the Motion and applicable law, the Court is of the opinion that removal was improper. The Court therefore **GRANTS** Plaintiffs' Motion to Remand. Because the Court lacks jurisdiction, it declines to rule on whether the asserted state law claims fall within the "substantive scope" of the Warsaw Convention and on Defendant's pending Motion for Summary Judgment.

## BACKGROUND

American Airlines, Inc. ("AA") requires passports for international travel-even for infants. Plaintiffs Jerry Rogers and Jodi Shelton claim AA's negligent representations as to the paperwork required for international travel with infants caused them to miss business meetings, opportunities, and travel. Plaintiffs, allegedly guided by the misinformation of an AA representative, traveled on an AA flight from Dallas/Fort Worth to Narita, Japan, on their way to Taiwan. Plaintiffs' travel partner, Northwest Airlines, refused to allow the Plaintiffs to board their connecting flight from Narita ·to Taiwan without a passport for their infant child and, because the child did not have the proper documen-

tation to remain in Narita, directed them to return to the United States, which they did. This suit, filed in state court on April 13, 2001, alleges claims for breach of contract and negligent misrepresentation.

■ AA removed the case to federal court on June 13, 2001, asserting federal question jurisdiction. In particular, AA argues that the Plaintiffs' claims for relief arise under the laws of the United States—the Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, 3014, T.S. No. 876 (1934), note following 49 U.S.C. § 40105, *et seq.* (the "Warsaw Convention"). On August 2, 2001,[1] Plaintiffs moved to remand. The primary issue to be determined in this motion is whether the complete preemption doctrine allows removal despite the Plaintiffs' failure to plead claims under the Warsaw Convention.

## ANALYSIS AND DECISION

**A. Plaintiffs' Well Pleaded Complaint**

■ Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Based on federalism principles, a case is presumed to lie outside this limited jurisdiction unless proved otherwise by the party seeking the federal forum. *Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 804 (5th Cir.1991). Here, AA removed this case to federal court pursuant to 28 U.S.C. § 1441(b), and must therefore establish federal jurisdiction.

---

1. AA's criticism of Plaintiffs for delaying in filing a motion to remand until two months after AA's notice of removal is misplaced. Section 1447(c) clearly states: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction,

the case shall be remanded." 28 U.S.C. § 1447(c) (2000). Therefore, a motion to remand based on subject matter jurisdiction may be made at any time prior to final judgment.

Removal is proper when "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States," exists. 28 U.S.C. § 1441(b) (2000). Essentially, two doors lead to original federal jurisdiction: (1) federal question jurisdiction (28 U.S.C. § 1331 (2000)), and (2) federal diversity jurisdiction (28 U.S.C. § 1332 (2000)). The lack of complete diversity between the Plaintiffs and AA eliminates federal diversity jurisdiction. Thus, if AA is to establish original federal jurisdiction, it must do so by demonstrating that federal question jurisdiction exists, meaning AA must show that this case "arises under federal law." *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716 (1913).

To determine whether a case "arises under federal law," the Court generally looks to whether the "plaintiff's well-pleaded complaint raises issues of federal law." *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986); *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998) ("[w]e have long held that '[t]he presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.' ") (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). The fact that a federal defense to the Plaintiffs' action may be raised will usually not suffice to create federal question jurisdiction. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 12, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

On its face, the Plaintiffs' Complaint asserts only common law breach of contract and negligent representation claims. AA contends that application of the "complete preemption" doctrine should transform the federal defense of Warsaw Convention preemption into a basis for removal jurisdiction.[2] As discussed below, although the Warsaw Convention's exclusivity provisions may well preempt Plaintiffs' state law claims, the delicate balance between state and federal courts cautions against finding that the field of international air travel is so completely preempted that any claim relating to the area is "necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

2. In its supplemental briefing, AA also argues that because the Plaintiffs' Complaint expressly mentions "international air travel," a federal claim under the Warsaw Convention is asserted on the face of the Complaint. The Court is unaware of any case interpreting the well-pleaded complaint doctrine in a fashion which would qualify that general allegation as a Warsaw Convention claim. AA also mentions, in its supplemental briefing, the holding in *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 926–27 (5th Cir.1997). There, the Fifth Circuit held that federal common law controlled a shipper's claim to recover three lost packages. To the extent AA attempts to argue federal common law controls the Warsaw Convention preemption issue, the Court finds this contention unavailing. The Court is unaware of a case analyzing this international treaty under federal common law. The facts of *Sam L. Majors Jewelers* are distinguishable: "[i]t is therefore arguable—perhaps probable—that a federal common law cause of action, *narrowly confined to claims similar to the claim before us today,* was preserved by the Civil Aeronautics Act's savings provision." *Id.* at 927 (emphasis added). The portion of the opinion not relied on by AA is relied on by the Plaintiffs. It analyzes the Airline Deregulation Act of 1978 under the complete preemption doctrine and finds "the ADA, unlike ERISA, did not intend to 'channel actions into federal court.' " *Id.* at 925 (quoting *American Airlines v. Wolens*, 513 U.S. 219, 230, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995)).

■ "Complete preemption," which creates federal removal jurisdiction, differs from the more common "ordinary preemption" or "conflict preemption," which does not. The Fifth Circuit has developed a stringent tripartite test to determine whether a statute is among the few falling within the complete preemption exception. *See Aaron v. Nat'l Union Fire Ins. Co.,* 876 F.2d 1157, 1164 (5th Cir.1989). "This test should be 'applied with circumscription to avoid difficult issues of federal-state relations,' and accordingly few federal statutes can meet such an exacting standard." *Heimann v. Nat'l Elevator Indus. Pension Fund,* 187 F.3d 493, 500 (5th Cir.1999). Recognizing that applicability of the complete preemption doctrine, which authorizes a case to be removed to a federal forum, is separate and distinct from the more common question of whether a given federal law preempts a conflicting state cause of action, the Court's analysis will turn to the merits of AA's removal to federal court.

**B.  Function of the Warsaw Convention**

■ The primary function of the Warsaw Convention is to foster uniformity in the laws governing international air carrier liability. *See Zicherman v. Korean Air Lines Co., Ltd.,* 516 U.S. 217, 219, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996). Uniformity is required to allow airlines to raise necessary capital, to provide a basis for insurance rate determinations, and to reduce inconsistent outcomes. *See In re Disaster at Lockerbie, Scotland on Dec. 21, 1988,* 928 F.2d 1267, 1275 (2d Cir.), *cert. denied,* 502 U.S. 920, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991). In line with the goals of uniformity, the Warsaw Convention supplies an exclusive remedy for injuries incurred during international transportation. There are three types of claims, set out in Chapter III of the Warsaw Convention, to which liability attaches: (1) those claims

based on personal injuries (Article 17); (2) those claims based on lost or damaged luggage (Article 18); and (3) those claims based on damages due to delays in transportation (Article 19).

AA argues that Article 19 is applicable to Plaintiffs' claims: "The carrier shall be liable for damage occasioned by delay in the transportation by air of passengers, baggage, or goods." 49 U.S.C. § 40105, art. 19. Plaintiffs rely on *Lathigra v. British Airways PLC,* 41 F.3d 535, 539 (9th Cir.1994), to argue that Article 19 does not apply to this case. There, airline passengers brought a negligence action against British Airways under Washington state law, alleging that it reconfirmed their reservations but negligently neglected to inform them that their connecting flight had been discontinued. The Ninth Circuit found the Warsaw Convention inapplicable, holding that the alleged negligence did not occur during the performance of the contract of carriage but rather days before, when the British Airways representative mistakenly reconfirmed their reservations on a nonexistent flight. *Id.* at 538.

Plaintiffs read *Lathigra* to instruct that the application of the Warsaw Convention turns not on whether their claims related to international travel, but rather on when those claims arose—here, prior to any international travel. In doing so, they narrowly define Article 19's "transportation by air," to literally mean "in the charge of a carrier," so as to exclude claims related to acts occurring before an individual arrives at an airport.

Though the point was not raised by AA, *Lathigra* and most of the other cases Plaintiffs cite on this issue pre-dated both *El Al Israel Airlines, Ltd. v. Tseng,* 525 U.S. 155, 166, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999), in which the Supreme Court clarified Warsaw Convention jurisprudence, and amendments to Article 24, which clarify the exclusivity of the Warsaw

Convention. *See* 144 Cong. Rec. S11059 (Sept. 28 1998).[3]

In *Tseng*, the Supreme Court filled a growing chasm concerning preemption of state law claims under the Warsaw Convention.[4] There, a passenger brought a claim under New York tort law after being subjected to an intrusive pre-boarding se-

curity search, alleging that the search caused her emotional and psychological injuries. *Tseng*, 525 U.S. at 160, 119 S.Ct. 662. Tseng did not suffer a "bodily injury" under Article 17, nor was the event that gave rise to his claim an "accident" as defined by Article 17. The Court nonetheless found that Article 24,[5] as amended,

---

3. President Clinton signed the instrument of ratification for the Montreal Protocol No. 4 on November 5, 1998. Montreal Protocol No. 4 to Amend the Convention for the Unification of Certain Rules Relating to International Carriage By Air, signed at Warsaw on October 12, 1929, as amended by the Protocol Done at the Hague on September 8, 1955, reprinted in S. Exec. Rep. No. 105–20, pp. 21–32 (1998). The Protocol entered into force in the United States on March 4, 1999. The Montreal Protocol No. 4, ratified by the Senate on September 28, 1998, amends Article 24 to read, in relevant part: "In the carriage of passengers and baggage, any action for damages, however founded, can only be brought subject to the conditions and limits set out in this Convention . . . ."

4. Prior to *Tseng*, a split existed between the circuits as to whether a passenger whose injuries did not fall within the Warsaw Convention could still recover under state law. *See Abramson v. Japan Airlines Co.*, 739 F.2d 130, 134 (3rd Cir.1984) (Warsaw Convention does not preclude passengers, unable to recover for personal injuries under the terms of the Convention, from maintaining actions against air carriers under local law), *cert. denied*, 470 U.S. 1059, 105 S.Ct. 1776, 84 L.Ed.2d 835 (1985), *rev'd by Tseng*, 525 U.S. at 160, 119 S.Ct. 662; *but see Potter v. Delta Air Lines, Inc.*, 98 F.3d 881, 885 (5th Cir.1996) (Warsaw Convention is the exclusive cause of action against international air carriers for personal injuries arising from international air travel). The Supreme Court had twice reserved the issue of the Warsaw Convention's exclusivity. *See Air France v. Saks*, 470 U.S. 392, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985) (concluding that a passenger's injury was not caused by an "accident" for which the airline could be held accountable under the Warsaw Convention, but expressing no view as to whether he could maintain a state cause of action for negligence); *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991) (mental or psychic injuries unac-

companied by physical injuries are not compensable under Article 17 of the Warsaw Convention, but the Court declined to reach the question of whether the Warsaw Convention provides the exclusive cause of action for injuries sustained during international air transportation).

5. Article 24, as amended by the Montreal Protocol No. 4, provides:

1. In the carriage of passengers and baggage, any action for damages, however founded, can only be brought subject to the conditions and limits set out in this Convention, without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights.

2. In the carriage of cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and limits of liability set out in this Convention without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights. Such limits of liability constitute maximum limits and may not be exceeded whatever the circumstances which gave rise to the liability.

S. Exec. Rep. No. 105–20 at 29.

Article 24, prior to the amendments by the Montreal Protocol No. 4, read:

1. In the cases covered by articles 18 and 19 any action for damages, however founded, can only be brought subject to the conditions and limits set out in this Convention.

2. In the cases covered by article 17 the provisions of the preceding paragraph shall also apply, without prejudice to the questions as to who are the persons who have the right to bring suit and what are their respective rights.

29 U.S.C. § 40105, art. 24 (1997)

precluded "a passenger from asserting any air transit personal injury claims under local law, including claims that failed to satisfy Article 17's liability conditions." *Id.* at 168, 119 S.Ct. 662.

*Tseng* has its limits. The Supreme Court expressly addressed those types of injuries not within the scope of the Warsaw Convention, such as those not suffered "on board [an] aircraft or in the course of any of the operations of embarking or disembarking," such as an injury sustained on a malfunctioning escalator on the way to the gate. *Tseng,* 525 U.S. at 166, 119 S.Ct. 662. However, Tseng's state law claims relating to the boarding procedures fell within the "substantive scope" of the Warsaw Convention's Article 17, and were thus preempted by the Warsaw Convention.[6]

Though Plaintiffs' characterizations of the scope of their claims likely do not shield them from the Warsaw Convention's expansive grasp, the Court declines to rule on whether the claims fall within the "substantive scope" of the Warsaw Convention. *Soley v. First Nat'l Bank of Commerce,* 923 F.2d 406, 408 (5th Cir.1991) (finding § 1447(d) bars appellate review of the jurisdictional question concerning complete preemption but that the district court's ruling on the defendant's preemption defense "will have no preclusive effect on the state court's consideration of the substantive preemption defense").

## C. The Stringent Complete Preemption Doctrine

*Tseng* held that in order to achieve uniformity of rules governing claims arising from international air travel, the Warsaw Convention serves as a claimant's exclusive remedy for personal injuries falling within the substantive scope of the Convention. It did not, however, expressly add the Warsaw Convention to the short list of causes of action that allow a defendant to evade the well-pleaded complaint rule. Likewise, although the Fifth Circuit has found the preemption of state law claims falling within the scope of the Warsaw Convention, it has not decided that all claims involving international travel are "federalized." *Potter v. Delta Air Lines, Inc.,* 98 F.3d 881, 886 (5th Cir.1996).

Removal jurisdiction, which is entirely a statutory construct, requires a separate determination as to whether the Plaintiffs' claims "arise under federal law." "Because of the obvious federalism implications of the complete-preemption doctrine, its application has been extremely limited by the courts." C. Wright, A. Miller, and E. Cooper, 14B Federal Practice and Procedure: Jurisdiction 3d § 3722.1, at 517 (1998).

The case of *Potter v. Delta Air Lines, Inc.* demonstrates the degree of deference this Circuit gives to the Warsaw Convention's goal of uniformity. *Id.* This pre-*Tseng* case found the Warsaw Convention

---

**6.** Though *Tseng* expressly dealt with exclusive remedies under Article 17 relating to personal injuries, it leaves little doubt that Articles 18 and 19 of the Warsaw Convention provide the exclusive causes of action for claims falling within the "substantive scope" of those provisions of the Convention. Article 24 uses broad exclusivity language for actions brought under Articles 18 (luggage and goods) and 19 (delays) of the Warsaw Convention in contrast to its more deferential language with reference to Article 17 (personal injury). The cases cited by "sister signato-

ries," to whom the Supreme Court gave "considerable weight" in *Tseng,* find preemption under Articles 18 and 19. If the Court is willing to "hold that the Warsaw Convention precludes a passenger from maintaining an action for personal injury damages under local law when her claim does not satisfy the conditions for liability under the Convention," then it follows that the exclusive remedy for delays in international travel under Article 19 should have the same preclusive effect. *Tseng,* 525 U.S. at 169, 119 S.Ct. 662.

preempted state law causes of action for damages sustained from personal injuries during international travel, including claims not falling·directly under Article 17. The court cautioned against allowing plaintiffs to "artfully" plead so as to characterize their damages as falling outside the articles of the Warsaw Convention "thereby creating an opt-out from the Convention's liability constraints." *Id.*

Similarly, *Boehringer–Mannheim Diagnostics, Inc. v. Pan American World Airways, Inc.*, 737 F.2d 456, 459 (5th Cir. 1984), *appeal dismissed and cert. denied*, 469 U.S. 1186, 105 S.Ct. 951, 83 L.Ed.2d 959 (1985), used expansive language to find that the Warsaw Convention preempted Texas law providing for attorneys' fees for claims for lost or damaged freight. *Boehringer* found that "uniformity [of liability in international air travel] has both an international and intranational application" which required preemption. *Id.* at 459.

In neither *Potter* nor *Boehringer* did the Fifth Circuit discuss the well-pleaded complaint rule because, in both cases, · the plaintiff's Warsaw Convention claims appeared on the face of the complaint. Thus, these cases are not dispositive on the removal issue here.

The only post-*Tseng* case discussing preemption under the Warsaw Convention as a basis for removal ruled in favor of appli-

cation of the complete preemption doctrine. *See Husmann v. Trans World Airlines, Inc.*, 169 F.3d 1151, 1152 (8th Cir. 1999).[7] In doing so, the court equated the Supreme Court's holding in *Tseng* with support for removal jurisdiction. *Id.* at 1153, n. 5 ("[w]e also think the Supreme Court's holding that the Warsaw Convention provides the exclusive cause of action for injuries sustained during international air transportation answers the dissent's argument that Husmann's claim is not removable under the well-pleaded complaint rule"). Judge Morris S. Arnold strongly dissented, finding the well-pleaded complaint rule mandated an analysis of the pleading not engaged in by the court. *Id.* at 1155 (Arnold, J., dissenting). His opinion underscores the important federalism concerns that dictate a strict construction of removal jurisdiction. *See Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365–66 (5th Cir.1995) ("the effect of removal is to deprive the state court of an action properly before it[;] removal [thus] raises significant federalism concerns, which mandate strict construction of the removal statute").

In this Circuit, the complete preemption doctrine is seemingly more limited than the *Husmann* majority's opinion suggests. *See Aaron v. Nat'l Union Fire Ins. Co.*, 876 F.2d 1157, 1164–65 (5th Cir.1989), *cert.*

7. AA offers a lengthy string-cite of district court cases for the proposition that the Warsaw Convention completely preempts state law claims. The majority of these cases deal with exclusivity of the federal cause of action, or conflict preemption, rather than the more difficult question of removal jurisdiction, and none of the cases analyze the complete preemption doctrine under the three-part test developed by the Fifth Circuit. *Luna v. Compania Panamena De Aviacion, S.A.*, 851 F.Supp. 826, 831 (S.D.Tex.1994), a pre-*Tseng* case within this jurisdiction, is among those cited by AA. Equating exclusivity with complete preemption, *Luna* found remand proper because the "Fifth Circuit precedent estab-

lishes that the Warsaw Convention creates the exclusive cause of action for personal injury liability against the defendants in this case." *Id.* However, a recent Fifth Circuit case, *Johnson v. Baylor Univ.*, 214 F.3d 630, 633 (5th Cir.), *cert. denied*, 531 U.S. 1012, 121 S.Ct. 567, 148 L.Ed.2d 486 (2000), requires an analysis of the Fifth Circuit's complete preemption three-part test: "a recitation of the general complete-preemption principle, without application of the specific tripartite test, is no longer sufficient . . . ." Though the parties here were asked to provide supplemental briefing on the effect of the three-part complete preemption test, AA devoted only two short paragraphs to the issue.

*denied,* 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990). *See also Jones v. Bankboston, N.A.,* 115 F.Supp.2d 1350, 1356 (S.D.Ala.2000) (chastising the Eighth Circuit for its "relaxed approach to complete preemption" and finding that the National Bank Act did not completely preempt the field as required for removal jurisdiction). The need for caution when handling the complete preemption doctrine can be understood through a brief history of its precedent.

In *Avco Corp. v. Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), the Supreme Court, without dissent or much discussion, opened the complete preemption door for claims preempted by § 301 of the Labor Management Relations Act. Fifteen years later, in *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 23, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), the Court discussed *Avco,* but failed to demonstrate how a court could determine when a statute's preemptive effect was "so powerful" as to "completely preempt" state causes of action within its scope. Four years later, in *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), the Court gave Section 502(a) of ERISA complete preemption status, finding clear congressional intent to make causes of action within Section 502(a)'s scope removable to federal court. In doing so, the Court reaffirmed that "the touchstone of the federal court's removal jurisdiction is ... the intent of Congress." *Id.* at 66, 107 S.Ct. 1542. Section 502(a) of ERISA was found to be "closely paralle[l]" to that of the LMRA so as to trigger "[t]he presumption that similar language in two labor law statutes ha[ve] a similar meaning." *Id.* at 65, 107 S.Ct. 1542. The Supreme Court has *clearly* sanctioned the complete preemption doctrine in these two areas—federal labor relations under § 301 of the LMRA and § 502(a) of ERISA. *Rivet v. Regions Bank of La.,* 522 U.S. 470, 476, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998). An express jurisdictional grant from Congress is found in both of these statutes.[8]

---

8. By way of example, § 502 of ERISA, the statute's civil enforcement mechanism, as set forth in 29 U.S.C. §§ 1132(e) and (f), provides an explicit jurisdictional grant from Congress:

(e) Jurisdiction

(*1*) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title.

. . . .

(f) Amount in controversy; citizenship of parties

The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action.

29 U.S.C. §§ 1132(e), (f) (1999). The Supreme Court, in *Metropolitan Life Insurance Co.,* 481 U.S. at 65, 107 S.Ct. 1542, found the Conference Report on ERISA's civil enforcement provisions of § 502(a) likewise persuasive:

All such actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor–Management Relations act of 1947.

H.R. Conf. Rep. No. 93–1280, p. 327 (1947). Similarly, § 301 of the LMRA, 29 U.S.C. § 185, covers jurisdiction:

(a) Venue, amount, and citizenship

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

. . . .

(c) Jurisdiction

For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States,

In *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), the Supreme Court pulled the reins on an extension of the complete preemption doctrine, finding no statutory justification for removal under § 514 of ERISA. Understanding the Supreme Court's careful approach to removal, the Fifth Circuit found removal under the Longshore and Harbor Workers' Compensation Act ("LHWCA") improper. *Aaron*, 876 F.2d at 1162. There, the relevant portion of the plaintiff's complaint, filed in state court, alleged intentional and negligent torts and nowhere mentioned the LHWCA. The Fifth Circuit traced the *Avco* exception to the well-pleaded complaint doctrine and noted the narrow strictures under which complete preemption could be used. Despite a previous panel ruling, later vacated en banc, the court declined to permit removal. *Compare Texas Employers' Ins. Ass'n v. Jackson*, 820 F.2d 1406 (5th Cir.1987), *vacated*, 862 F.2d 491 (5th Cir.1988) (en banc).

■ In the wake of *Aaron*, courts within this Circuit have implemented a tripartite test to determine whether the complete preemption doctrine applies: (1) whether the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) whether there is a specific jurisdictional grant to the federal courts for enforcement of the right; and (3) whether there is a clear congressional intent that the claims brought under the federal law can be removed. *Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir.), *cert. denied*, 531 U.S. 1012, 121 S.Ct. 567, 148 L.Ed.2d 486 (2000); *Heimann v. Nat'l Elevator Ind. Pension Fund*, 187 F.3d 493, 501 (5th Cir.

1999) ("few federal statutes can meet such an exacting standard").

■ AA can satisfy the first factor in *Aaron's* three-factor test. The Warsaw Convention contains a civil enforcement provision that establishes an express cause of action for liability under Articles 17, 18, and 19. It is thus more than simply a defense; the Plaintiffs could have brought an independent cause of action under the Warsaw Convention. *Copling v. The Container Store, Inc.*, 174 F.3d 590, 595 (5th Cir.1999), *appeal dism'd by* 174 F.3d 590 (5th Cir.1999). This does not necessarily mean, however, that claims involving international flights are among the narrow class of claims that are so necessarily federal that they always support removal to federal court under the complete preemption doctrine. As was the case before *Aaron*, the doctrine of complete preemption is an extremely narrow corollary to the well-pleaded complaint rule. *Johnson*, 214 F.3d at 632 (Pilot Records Sharing Act did not fall within the ambit of the complete preemption doctrine); *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 338 (5th Cir.1995) (en banc) (Airline Deregulation Act); *Bryceland v. AT&T*, 122 F.Supp.2d 703, 706 (N.D.Tex.2000) (Federal Communications Act); *Asunto v. Shoup*, 132 F.Supp.2d 445, 450 (E.D.La.2000) (Copyright Act); *Jones v. Bankboston, N.A.*, 115 F.Supp.2d 1350, 1354 (S.D.Ala.2000) (National Bank Act); *Saia v. Universal Card Serv. Corp.*, No. 00–1295, 2000 WL 863979, *2 (E.D.La.2000) (Fair Credit Reporting Act).

The next question is whether there is a specific jurisdictional grant to the federal courts for enforcement of rights created by the Warsaw Convention. Article 28 details

district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in

any district in which its duly authorized officers or agents are engaged in representing or acting for employee members. 29 U.S.C. §§ 185(a), (c) (1998).

jurisdiction under the Warsaw Convention.[9] The jurisdictional limit relates to the "territory of one of the High Contracting Parties," which we can assume means the United States, as a signatory. While the federal courts are necessarily among those within the United States, jurisdiction is not expressly limited to the federal forum within the United States. *See, e.g., Imtiaz v. Emery Airfreight, Inc.,* 728 S.W.2d 897, 899 (Tex.App.-Houston [1st Dist.] 1987, no writ) (state law case interpreting the Warsaw Convention); *Parker v. Pan American World Airways, Inc.,* 447 S.W.2d 731, 734 (Tex.Civ.App.-Dallas 1969, writ dism'd by agmt.).

The final inquiry is whether Congress clearly intended that claims brought under the Warsaw Convention be removable. Although a congressional intent favoring uniformity is found in cases turning on the Warsaw Convention, this relates to the remedy available, not to the forum adjudicating the remedy. *Tseng,* 525 U.S. at 168, 119 S.Ct. 662 ("[g]iven the Convention's comprehensive scheme of liability rules and its textual emphasis on uniformity, we would be hard put to conclude that the delegates at Warsaw meant to subject air carriers to the distinct, nonuniform liability rules of the individual signatory nations."). Differing interpretations of the Warsaw Convention provisions are bound to develop between the various signatory nations and even within a single signatory nation, yet a separate interpretive body was never devised. The goal of "uniformity" is reached through exclusive remedies and liabilities. There is simply no express jurisdictional grant from Congress requiring that cases concerning international air

travel be heard in federal court. *Hussmann,* 169 F.3d at 1155 (Arnold, J., dissenting) ("the defendant's removal of the case cannot survive the application of the principles outlined in *Aaron:* The defendant has not directed our attention to any statute, nor has my research revealed any, specifically conferring federal jurisdiction over claims under the Warsaw Convention"). The recent Senate amendments to Article 24 clarified the exclusivity of remedies; they did not clarify the exclusivity of the court. *See Tseng,* 525 U.S. at 161, 119 S.Ct. 662. Here, AA's preemption claims can be heard by the state court. *Parker v. Pan American World Airways, Inc.,* 447 S.W.2d 731, 734 (Tex.Civ.App.-Dallas 1969, writ dism'd by agmt.) (applying the Warsaw Convention); *Imtiaz v. Emery Airfreight, Inc.,* 728 S.W.2d 897, 899 (Tex. App.-Houston [1st Dist.] 1987, no writ).

■ The complete preemption doctrine applies only when Congress intends not merely to preempt a field in state law, but also intends to transfer jurisdiction of the subject matter from state to federal courts. *Metropolitan Life,* 481 U.S. at 65–66, 107 S.Ct. 1542. The Court is mindful that in the field of international air travel the only remedy that will generally be available to a plaintiff will fall within federal law, regardless of what the plaintiff is pleading, but cannot assume Congress intended these cases to be confined to a federal forum. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (we have long held that "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which

9. 1. An action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties, either before the court of the domicile of the carrier or of his principal place of business, or where he has a place of business through which the

contract has been made, or before the court at the place of destination.

2. Questions of procedure shall be governed by the law of the court to which the case is submitted.

29 U.S.C. § 40105, art. 28.

provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint").

This case cannot be pigeon-holed as a mere defensive-plea situation because if it is found to fall within the "substantive scope" of the Warsaw Convention, the Convention will provide the exclusive right of action for the Plaintiffs. However, the absence of an express jurisdictional grant from Congress weighs heavily in this Circuit and, in the Court's view, counsels against the creation of an absolute rule requiring a federal forum for claims under the Warsaw Convention. *Aaron*, 876 F.2d at 1166; *Metropolitan Life*, 481 U.S. at 66, 107 S.Ct. 1542 (congressional intent is the "touchstone" of federal court removal jurisdiction). The Court thus concludes that removal was improper, since it has not found such intent manifested with respect to the Warsaw Convention.

### CONCLUSION

Having considered Plaintiffs' Motion to Remand and the applicable law, the Court is of the opinion that this Court lacks federal question jurisdiction over the claims asserted by Plaintiffs Jerry and Jodi Shelton against Defendant American Airlines, Inc. The Court therefore **GRANTS** Plaintiffs' Motion to Remand. The Court is without jurisdiction to rule on Defendant's Motion for Summary Judgment or whether the claims at issue fall within the "substantive scope" of the Warsaw Convention. The Court remands this case to County Court at Law Number 2 of Dallas County, Texas, Cause No. CC–01–04094B, for further proceedings.

**SO ORDERED.**

United States District Court, N.D. Texas, Dallas Division.